**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

PALLADIAN PARTNERS, L.P; HBK MASTER
FUND L.P.; HIRSH GROUP LLC; and VIRTUAL
EMERALD INTERNATIONAL LIMITED,

*Plaintiffs*,

-against-

THE REPUBLIC OF ARGENTINA,

*Defendant*.

Case No.:  1:25-cv-01954-CKK

**ORAL ARGUMENT REQUESTED**

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING THE
REPUBLIC OF ARGENTINA'S MOTION TO DISMISS THE COMPLAINT**

David M. Orta (D.C. Bar No. 462083)
Daniel Salinas-Serrano (D.C. Bar No. 974159)
Julianne F. Jaquith (D.C. Bar No. 1026471)
(*pro hac vice*)
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
555 13th Street NW
Suite 600
Washington, D.C. 20004
(202) 538-8000
(202) 538-8100 (fax)
davidorta@quinnemanuel.com
danielsalinas@quinnemanuel.com
juliannejaquith@quinnemanuel.com

*Counsel for Plaintiffs Palladian Partners,
L.P., HBK Master Fund L.P., Hirsh Group
LLC, and Virtual Emerald International
Limited*

Dated: March 2, 2026

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................3

    A.    The Securities............................................................................................3

    B.    Plaintiffs' Right To Pursue Remedy Against The Republic .....................4

    C.    English Proceedings .................................................................................6

        1.    Argentina's Recognition Of Plaintiffs As "Holders"...................7

        2.    English Judgment .........................................................................9

LEGAL STANDARD ..........................................................................................................12

ARGUMENT .......................................................................................................................13

I.      THE REPUBLIC HAS EXPRESSLY WAIVED SOVEREIGN IMMUNITY ................13

II.     THE REPUBLIC IS BARRED FROM ARGUING THAT PLAINTIFFS ARE
      NOT "HOLDERS" ..............................................................................................22

CONCLUSION....................................................................................................................27

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*A.I. Trade Finance, Inc. v. Centro Internationale Handelsbank AG*,
    926 F.Supp. 378 (S.D.N.Y. 1996) ................................................................23

*Allen v. McCurry*,
    449 U.S. 90 (1980) ......................................................................................25

*Am. Freedom Law Ctr. v. Obama*,
    821 F.3d 44 (D.C. Cir. 2016) ......................................................................13

*Apotex, Inc. v. Food & Drug Admin.*,
    393 F.3d 210 (D.C. Cir. 2004) ....................................................................27

*Argentine Republic v. Amerada Hess Shipping Corp.*,
    488 U.S. 428 (1989) ....................................................................................13

*Aurelius Capital Master, Ltd. v. Republic of Argentina*,
    728 F.Supp.3d 274 (S.D.N.Y. 2024) .....................................................22, 24

*Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*,
    734 F.3d 1175 (D.C. Cir. 2013) ..................................................................13

*Capital Ventures Intern. v. Republic of Argentina*,
    552 F.3d 289 (2d Cir. 2009) ..................................................................17, 20

*Commerzbank AG v. Wells Fargo Bank, N.A.*,
    2024 WL 4554081 (2d Cir. Oct. 23, 2024) ................................................21

*Davis v. D.C.*,
    925 F.3d 1240 (D.C. Cir. 2019) .............................................................22, 25

*Diverse Partners, LP v. AgriBank, FCB*,
    2017 WL 4119649 (S.D.N.Y. Sept. 14 2017) ..............................................4

*Donnelly v. FAA*,
    411 F.3d 267 (D.C.Cir. 2005) .....................................................................26

*Drake v. F.A.A.*,
    291 F.3d 59 (D.C. Cir. 2002) ......................................................................25

*Enron Nigeria Power Holding, Ltd. v. Fed. Republic of Nigeria*,
    234 F. Supp. 3d 251 (D.D.C. 2015) ............................................................13

*Feldman v. F.D.I.C.*,
  879 F.3d 347 (D.C. Cir. 2018) ..................................................................................... 13

*GOT I, LLC and Kids II, Inc. v. XRT, Inc. et al.*,
  2019 WL 12529020 (N.D. Ga. Jan 18, 2019) ............................................................. 16

*Gresham v. D.C.*,
  66 F.Supp.3d 178 (D.D.C. 2014) ............................................................................25, 26

*GT Beverage Co. LLC v. Coca Cola Co.*,
  2010 WL 11595832 (C.D. Cal. Aug. 2, 2010) ............................................................. 23

*Hausler v. JP Morgan Chase Bank, N.A.*,
  127 F.Supp.3d 17 (S.D.N.Y. 2015) ..........................................................................8, 24

*Hurst v. Socialist People's Libyan Arab Jamahiriya*,
  474 F. Supp. 2d 19 (D.D.C. 2007) ..........................................................................25, 26

*I.A.M. Nat'l Pension Fund, Benefit Plan A v. Indus. Gear Mfg. Co.*,
  723 F.2d 944 (D.C.Cir. 1983) ...................................................................................... 25

*International Trading and Indus. Inv. Co. v. DynCorp Aerospace Technology*,
  763 F.Supp.2d 12 (D.D.C. 2011) .................................................................................. 26

*Kiska Constr. Corp. v. Wash. Metro. Area Transit Auth.*,
  321 F.3d 1151 (D.C. Cir. 2003) ................................................................................... 16

*Lewis v. Mutond*,
  62 F.4th 587 (D.C. Cir. 2023) ........................................................................................ 3

*Morgan v. United States Parole Commission*,
  304 F.Supp.3d 240 (D.D.C. 2016) ............................................................................... 25

*Moses v. Howard Univ. Hosp.*,
  606 F.3d 789 (D.C. Cir. 2010) ......................................................................... 22, 23, 24

*New Hampshire v. Maine*,
  532 U.S. 742 (2001) ........................................................................................ 22, 23, 24

*NML Capital, Ltd. v. Republic of Argentina*,
  No. 04-0197 (CKK), 2005 WL 8161968 (D.D.C. Aug. 3, 2005) ................................... 5

*NW Global Strategy v. Republic of Argentina*,
  2011 WL 1237538 (S.D.N.Y. Mar. 31, 2011) ..........................................................6, 21

*Page v. United States*,
  729 F.2d 818 (D.C. Cir. 1984) ................................................................................25, 26

*Phoenix Light SF Ltd.* v. *Deutsche Bank Nat'l Tr. Co.*,
  172 F. Supp. 3d 700 (S.D.N.Y. 2016) .......................................................... 21

*Rapture Shipping, Ltd. v. Allround Fuel Trading B.V.*,
  350 F.Supp.2d 369 (S.D.N.Y. 2004) .......................................................... 23

*RSM Production Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*,
  800 F.Supp.2d 182 (D.D.C. 2011) .......................................................... 26

*Simon v. Republic of Hungary*,
  77 F.4th 1077 (D.C. Cir. 2023).......................................................... 13

*Society of Lloyd's v. Edelman*,
  2005 WL 639412 (S.D.N.Y. Mar. 21, 2005) .......................................................... 26

*Transam. S.S. Corp. v. Somali Democratic Republic*,
  767 F.2d 998 (D.C. Cir. 1985) .......................................................... 13

*In re United Mine Workers of Am. Employee Ben. Plans Litig.*,
  782 F.Supp. 658 (D.D.C. 1992).......................................................... 8

*United States v. Ins. Co. of N. Am.*,
  83 F.3d 1507 (D.C. Cir. 1996).......................................................... 16

*United States v. Sum of $70,900,605, et al.*,
  991 F.Supp.2d 154 (D.D.C. 2013) .......................................................... 25

*Usoyan v. Republic of Turkey*,
  438 F. Supp. 3d 1 (D.D.C. 2020).......................................................... 13

*World Wide Mins., Ltd. v. Republic of Kazakhstan*,
  296 F.3d 1154 (D.C. Cir. 2002).......................................................... 14

*Zimmer Orthopaedic Surgical Prods., Inc. v. Haemonetics Corp.*,
  2005 WL 8172105 (N.D. Ohio Dec. 6, 2005) .......................................................... 16

## <u>Statutes</u>

28 U.S.C.§ 1605.......................................................... 1, 14

Plaintiffs Palladian Partners, L.P., HBK Master Fund L.P., Hirsh Group LLC, and Virtual Emerald International Limited ("Plaintiffs") respectfully submit this Memorandum of Points and Authorities in opposition to the motion (ECF 19, "MTD") of Defendant, the Republic of Argentina ("Argentina" or the "Republic"), to dismiss the Complaint (ECF 1, "Compl.").

## INTRODUCTION

The Republic has undisputedly waived immunity, and the Foreign Sovereign Immunities Act's ("FSIA") waiver exception, 28 U.S.C. § 1605(a), applies. (*See* Compl. ¶¶ 16-17, 19-20.) The Republic's arguments that it has not waived are fundamentally flawed. Its motion to dismiss should be denied.

The Republic presses a tortured reading of the governing indenture documents (Compl. Ex. 3 ("2005 Indenture"); Compl. Ex. 5 ("Global Security")) to argue that its waiver of sovereign immunity does not cover this suit by Plaintiffs. It argues that Plaintiffs cannot sue because they are beneficial owners—and not the registered "Holder"—of the GDP-linked Euro-denominated securities (the "Securities"). Conveniently, the Republic omits that it has agreed to regard beneficial owners as the "Holder" for all purposes of pursuing remedies against it, including the remedy sought by Plaintiffs in this case.

In Section 11 of the Global Security, the Republic "expressly acknowledges, with respect to the right of any Holder to pursue a remedy under the Indenture, the GDP-Linked Securities Authorization or the Securities, ***the right of any beneficial owner of Securities to pursue such remedy*** with respect to the portion of this Global Security that represents such beneficial owner's interest in this Security ***as if Certificated Securities had been issued to such beneficial owner***." (Global Security § 11 at R-13 (emphasis added); *see also* 2005 Indenture § 4.8 at 25.) As the Republic concedes, a "Holder" holds the "right to invoke the Republic's waiver of sovereign immunity in this Court" to enforce a judgment rendered by an English court. (MTD 1, 4.) Because

1

the Republic expressly agreed to extend that same right to beneficial owners as if they were legal Holders of the Securities, its waiver of sovereign immunity applies in this case.

Further, the Republic is barred from arguing that Plaintiffs are not "Holders." (MTD 7 ("Plaintiffs' claim to Holder status must be rejected.").)  Plaintiffs commenced the underlying English proceedings based on their rights as "Holders" to enforce the Republic's payment under the Securities.  Contrary to the position taken here, the Republic never contended in those proceedings that beneficial owners are not Holders. Later, when the English trial court determined that Plaintiffs, as Holders, were entitled to enforce the payment from the Republic under the English judgment, the Republic also chose not to challenge that determination on appeal.  The fact that Plaintiffs are beneficial owners of the Securities remains the same, and the Republic could have raised its no Holder argument before the English courts, but opted not to do so.  *Res judicata* thus applies to bar the Republic's "Plaintiffs are not Holders" argument.

The Republic is also judicially estopped.  In the English proceedings, the Republic took the position that Plaintiffs were "Holders," even affirmatively arguing for its defense on liability that Plaintiffs, as "Holders," should be bound by the Argentine Ministry of Economy's calculation of the amounts due under the Securities.  It would now prejudice Plaintiffs if they cannot enforce the judgment they obtained against the Republic under the "Holder" status.  Moreover, in the Southern District of New York, as referred to in the Republic's brief, (MTD 4–5), it successfully dismissed claims by "different beneficial owners of similar dollar-denominated securities" with terms virtually identical to the Securities here, on the basis of the Global Security's "no-action" clause that applies to "Holders."  Allowing the Republic to conveniently change its position to avoid this Court's jurisdiction is antithetical to the integrity of the judicial process and judicial economy.

## BACKGROUND

### A.    The Securities

In December 2001, Argentina defaulted on its bond debt liabilities, leading it to make exchange offers whereby owners of the Republic's defaulted debt could exchange their non-performing bonds for new securities issued by the Republic. (Compl. ¶ 22.) Participating creditors received approximately 25% to 30% of the value of their claims. (*Id.* ¶ 23.)

Through the 2005 debt exchange, the Republic issued thirteen new securities denominated in Euro and other currencies. (Declaration of Aidan Alexander O'Rourke dated March 2, 2026 ("O'Rourke Decl."), Ex. 10 ("English Trial Court's April 5, 2023 Judgment"[1]) ¶ 26.) These new securities were issued pursuant to the trust indenture dated June 2, 2005 between the Republic, as Issuer, and the Bank of New York Mellon, as Trustee. (2005 Indenture at 1.) The 2005 Indenture was subsequently amended by the first supplemental trust indenture dated April 30, 2010 ("2010 Indenture" and, together with the 2005 Indenture, the "Indenture"). (Compl. Ex. 4 ("2010 Indenture") at 1.)

One of these securities was the Euro-denominated Securities at issue here. (Compl. ¶ 2.) The Securities were issued on June 2, 2005 in the form of a Global Security, which is registered in the name of The Bank of New York Depository (Nominees) Limited (the "Nominee"), acting as nominee of the common depositary for Euroclear and Clearstream. (Global Security at 1.)

On its reverse side, the Global Security further sets out various terms and conditions. (Global Security at R-1–R-21.) The Global Security and the Indenture, together, constitute the governing documents for the Securities. (Compl. ¶ 3.) Each contains an unambiguous choice-of-

---

[1]    This Court can take judicial notice of the English Trial Court's April 5, 2023 Order because it is "incorporated by reference into the [C]omplaint" at paragraph 37. *Lewis v. Mutond*, 62 F.4th 587, 590 n.1 (D.C. Cir. 2023).

law provision establishing English law as the applicable law. (2005 Indenture § 12.7; Global Security § 16 at R-14.)

B.    **Plaintiffs' Right To Pursue Remedy Against The Republic**

Plaintiffs are beneficial holders of approximately 47% of the Securities represented by the Global Security. (Compl. ¶ 27.) While the Nominee constitutes the legal title "Holder" of the Global Security, as it was registered in the name of the Nominee as nominee of the common depositary for Euroclear and Clearstream, (*see* Global Security § 1(c) at R-1), the Nominee has no actual interest in the Securities beyond just holding them for beneficial owners, who hold the ultimate right to receive payments from the Republic under the Securities. *Cf. Diverse Partners, LP v. AgriBank, FCB*, 2017 WL 4119649, at *5 (S.D.N.Y. Sept. 14 2017) (where the securities are held in street name, "as a practical matter, the beneficial owner is the only person that has an interest in pursuing any rights or remedies" under the securities).[2]

The payment clause of the Global Security also elucidates this point, requiring the Republic to make payments due under the Securities by "directing the Trustee to hold these funds **in trust for the Trustee and the beneficial owners of this Security** . . . to make a wire transfer of such amount to the Bank of New York Depositary (Nominees) Limited, as the registered owner of this Security . . . [which] **will receive these funds in trust for *pro rata* distribution among the beneficial owners of this Security** based on the notional amount of this Security that each such beneficial owner holds." (Global Security § 2(a) at R-5 (emphasis added).)

---

[2]    For example, Euroclear's operating procedures expressly provide that to the extent that its nominee "acts as registered owner of any security held in the Euroclear System," Euroclear "authorise[s] . . . the underlying beneficial owners of such securities to maintain proceedings against issuers." (O'Rourke Decl. Ex. 9 § 5.1.3(a) at 110.)

Reflecting this reality, the Republic has agreed in the Global Security and the Indenture to confer to beneficial owners of the Securities the right to pursue remedies directly against the Republic, recognizing beneficial owners as "Holder[s]" for that purpose.  (Global Security § 11 at R-13; 2005 Indenture § 4.8 at 25.)   Specifically, the last sentence of Section 4.8 of the 2005 Indenture, hereafter the "Republic Acknowledges Clause", provides:

> **The Republic expressly acknowledges**, with respect to the right of any Holder to pursue a remedy under this Indenture or the Debt Securities, **the right of any beneficial holder of Debt Securities to pursue such remedy with respect to the portion of the Global Security that represents such beneficial holder's Debt Securities as if definitive Debt Securities had been issued to such Holder**.

(2005 Indenture § 4.8 at 25 (emphasis added).)

The Global Security, in Section 11, also adopts the near identical language from Section 4.8 of the 2005 Indenture:

> **The Republic expressly acknowledges**, with respect to the right of any Holder to pursue a remedy under this Indenture, the GDP-Linked Securities Authorization or the Securities, **the right of any beneficial owner of Securities to pursue such remedy with respect to the portion of this Global Security that represents such beneficial owner's interest in this Security as if Certificated Securities had been issued to such beneficial owner**.

(Global Security § 11 at R-13 (emphasis added).)

This critical feature distinguishes the Securities from the bonds issued by the Republic under the Fiscal Agency Agreement (the "FAA") of 1994, which bonds Argentina defaulted in 2001, triggering a litany of litigation, including before this Court.  *Cf. NML Capital, Ltd. v.*

*Republic of Argentina,* No. 04-0197 (CKK), 2005 WL 8161968, at *2 (D.D.C. Aug. 3, 2005). Under the terms of the FAA, "an owner of a beneficial interest" had to "receive authorization from the registered holder of the bond before it may sue." *NW Global Strategy v. Republic of Argentina*, 2011 WL 1237538, at *2 (S.D.N.Y. Mar. 31, 2011). The bond instruments at issue here have no such requirements.  As part of its debt exchange program, Argentina agreed to the expansion of beneficial owners' direct enforcement rights, in contrast to the more restrictive approach it had previously adopted in the FAA.  This change is what is reflected in the Republic Acknowledges Clause in the Indenture and the Global Security.

### C.    English Proceedings

In December 2014, Argentina failed to make payments under the Securities for the year 2013, contending that one of the contractual conditions for payment was not met as a result of the country's change in methodology for calculating its GDP.  (Compl. ¶ 28.)  Plaintiffs disagreed with the Republic's methodological change and sued.  (*Id.* ¶¶ 29, 30; O'Rourke Decl. ¶ 5.)

In 2019, Plaintiffs commenced proceedings before the High Court of Justice, King's Bench Division, Commercial Court in London, England (the "Trial Court") against Argentina, seeking, among others, the Republic's payment of the amounts due under the Securities for the year 2013 for all beneficial owners of the Securities, plus interest.  (*Id.* ¶¶ 29, 30, 34.)  Along with the Republic, the Trustee under the Indenture, *i.e.*, the Bank of New York Mellon, was joined as a defendant to ensure that it be bound by and receive the benefit of the relief sought by Plaintiffs, although Plaintiffs alleged no wrongdoing against the Trustee in the English proceedings. (O'Rourke Decl. ¶ 14; O'Rourke Decl. Ex. 1 ("Plaintiffs' Re-Re-Amended Particulars of Claim") ¶ 3.)

1.    <u>Argentina's Recognition Of Plaintiffs As "Holders"</u>

Before the Trial Court, Plaintiffs pursued their claim against the Republic pursuant to Sections 4.8 and 4.9 of the 2005 Indenture and Section 11 of the Global Security.  (O'Rourke Decl. ¶ 10; English Trial Court's April 5, 2023 Judgment ¶ 284.)

Section 4.8 of the 2005 Indenture, which also contains the Republic Acknowledges Clause, entitles an individual "Holder" to "institute any suit, action or proceeding in equity or at law upon or under or with respect to the Indenture or . . . the Debt Securities" for "the equal, ratable and common benefit of all Holders," provided that the individual "Holder" has complied with certain preconditions before bringing an action. (2005 Indenture § 4.8 at 24–25.)  Section 11 of the Global Security mirrors the language of Section 4.8 of the 2005 Indenture. (Global Security § 11 at R-13.)

Section 4.9 in turn provides:

<u>Unconditional Right of Holders to Receive Principal and Interest</u>. Notwithstanding Section 4.8, **each Holder of Debt Securities shall have the right, which is absolute and unconditional, to receive payment of the principal of and interest on its Debt Security** on the stated maturity date for such payment expressed in such Debt Security (as such Debt Security may be amended or modified pursuant to Article Seven) **and to institute suit for the enforcement of any such payment, and such right shall not be impaired without the consent of such Holder.**

(2005 Indenture § 4.9 at 25 (emphasis added).)

In the English proceedings, Plaintiffs pleaded—and were required by the Republic to prove—that they were beneficial owners of the Securities so that they could pursue the suit against the Republic, as "Holders".  (Plaintiffs' Re-Re-Amended Particulars of Claim ¶ 2; O'Rourke Decl. ¶ 9 & Exs. 4–8.)

Despite Plaintiffs' being beneficial holders of the Securities, and not the registered owner, the Republic, during the entirety of the English proceedings, never disputed Plaintiffs' ability to pursue their claims as "Holders" under Sections 4.8 and 4.9 of the Indenture.  (O'Rourke Decl. ¶ 13.)  Instead, the Republic admitted that "[p]ursuant to Section 4.9 of the Indenture, [Plaintiffs] have an absolute and unconditional right to pursue proceedings for the enforcement of principal and interest on the Securities in respect of their own beneficial interests" and that "[Plaintiffs Palladian Partners, L.P. and HBK Master Fund L.P.] have complied with the provisions of Section 4.8 of the Indenture, entitling them to institute proceedings in their own name to enforce the terms of the Securities." (*Compare* Plaintiffs' Re-Re-Amended Particulars of Claim ¶¶ 52–53 at 34 *with* O'Rourke Decl. Ex. 2 ("Re-Re-Amended Defense of Argentina") ¶¶ 56–57 at 50.[3])

Further, in the English proceedings, the Republic advanced its defense on liability, relying on Section 1(e) of the Global Security, which provides: "All calculations made by the Ministry of Economy hereunder shall be binding on the Trustee, the Registrar, the trustee paying agent and each other trustee paying agent and **all Holders of this Security**, absent bad faith, willful misconduct or manifest error on the part of the Ministry of Economy."  (Global Security § 1(e) at R-4 (emphasis added).)  Equating Plaintiffs with "Holders" of the Securities, and denying any wrongdoing on its part, the Republic argued that "once the Ministry of Economy determined the Payment Amount for the Reference Year 2013 to be zero, all calculations relevant to that determination are binding on the [Plaintiffs]." (Re-Re-Amended Defense of Argentina ¶¶ 46.3.3– 46.3.4 at 36; *see also id.* ¶ 4.10 at 4; ¶¶ 18.7–18.8 at 13.)

---

[3]    The Court may "consider a judicial admission as *evidence* in another case." *Hausler v. JP Morgan Chase Bank, N.A.*, 127 F.Supp.3d 17, 37 (S.D.N.Y. 2015) (quoting *In re United Mine Workers of Am. Employee Ben. Plans Litig.,* 782 F.Supp. 658, 674 (D.D.C. 1992)).

2.    <u>English Judgment</u>

On April 5, 2023, following the trial, the Trial Court issued its judgment against Argentina, determining that approximately EUR 1.330 billion are due by the Republic as the total Payment Amount for the year 2013. (English Trial Court's April 5, 2023 Judgment ¶ 306.)  This relief was for "all holders of the Securities," as a result of Plaintiffs' successful Section 4.8 claim, and the Trial Court ordered the Republic to pay that sum, plus interest, to the Trustee.  (*Id.* ¶¶ 277, 306.)

Importantly, the Trial Court also concluded that Plaintiffs, pursuant to a Holder's right provided in Section 4.9 of the Indenture, are entitled to the judgment and to receive a proportion of the Republic's payment in their own right and in respect to their respective beneficial entitlement under the Securities.  (*Id.* ¶¶ 277-303, 306(3); *see also* O'Rourke Decl. ¶ 19.)  The Trial Court ruled so on the basis that Section 4.9 provides the Holder's "right to claim the Payment Amount" due under the Securities from the Republic.  (English Trial Court's April 5, 2023 Judgment ¶ 302.)

On June 9, 2023, following post-trial hearings, the Trial Court issued a final money judgment against the Republic (the "Judgment," Compl. Ex. 1), requiring, among other things, the Republic to pay the Trustee: (a) EUR 1,329,760,063.39, being the Republic's payment obligations to all Holders of the Securities for the year 2013 (the "2013 Payment Amount"); (b) EUR 233,220,560.34 as pre-judgment interest on the 2013 Payment Amount; (c) EUR 64,311,645.07 in respect of Part 36 Entitlements (the "Plaintiffs' Part 36 Entitlements"[4]); (d) Post-judgment interest

---

[4]      The Plaintiffs' Part 36 Entitlements are Judgment Sums to which Plaintiffs are entitled because they made a formal monetary offer to the Republic under Part 36 of the English Civil Procedure Rules (being the civil procedure rules that apply in the English trial courts) to settle the proceedings, which was not accepted by the Republic, and which Plaintiffs beat at trial. (Compl. ¶ 35 & n.1; O'Rourke Decl. ¶ 22.) The Plaintiffs' Part 36 Entitlements (and related post-judgment interest) and costs of the proceedings are therefore entitlements for the benefit of

on each of the above amounts, at a rate of 2% per annum above Euribor with a six-month tenor calculated based on the average rate over each six-month period from the date of the order—June 9, 2023; and (e) the Plaintiffs' costs of the proceedings (together, the "Judgment Sums"). (Judgment ¶¶ 2-7.)

Consistent with the English Trial Court's April 5, 2023 Judgment, the Judgment further provides that the Plaintiffs "are entitled, pursuant to [Section] 4.9 of the Indenture, for so long as they retain holdings of the Securities, to receive from the Republic a portion of the Judgment Sums reflecting their beneficial entitlement under the Securities." (*Id.* ¶ 13.)   It further provides that "**each [Plaintiff] shall have an "individual right to enforce the Judgment (including all Judgment Sums)**" so long as they "retain holdings of the Securities" and abide by the terms of the Schedule A appended to the Judgment. (*See id.* ¶ 15 (emphasis added).)

Schedule A contains the agreed terms between the Trustee and Plaintiffs relating to the enforcement of the Judgment, which the Trial Court authorized Plaintiffs to enforce in full, accounting to the Trustee for any recoveries made.  (O'Rourke Decl. ¶ 24.)   In relevant part, Schedule A provides:

> (a) The proceeds of any and all actions taken by [Plaintiffs] to enforce the Judgment Sums shall be paid to the Trustee. (Judgment, Sch. A § 1);
>
> (b) The Republic shall not make payments in respect of the Judgment Sums or any part of them other than direct to the Trustee. (*Id.* § 3.a);
>
> (c) [Plaintiffs] shall use their best endeavours to procure that all payments in respect of the Judgment Sums are paid direct to the Trustee.  If, in the

---

Plaintiffs only, while the remaining components of the Judgment Sums are entitlements for the benefit of all Holders of the Securities.  (Judgment ¶¶ 5, 7; O'Rourke Decl. ¶ 22.)

10

course of enforcing this Judgment . . . [the Plaintiffs] or any of them receive payment of any Judgment Sums in whole or part . . . they shall transfer those payments within seven (7) days to the Trustee. (*Id.* § 3.b);

(d) [Plaintiffs] shall provide quarterly reports to the Trustee providing details in relation to their enforcement of the Judgment Sums. [Plaintiffs] shall also answer such questions and provide such further information as the Trustee may reasonably request. (*Id.* § 3.f.)

The parties had the opportunity to be heard on the terms of the Judgment. (O'Rourke Decl. ¶ 25.) The Republic did not object to the inclusion of paragraphs 13 and 15 (establishing Plaintiffs' rights to enforce the Judgment), nor to the terms of Schedule A, which enables the Trustee—through Plaintiffs' enforcement actions—to secure the Republic's payments under the Judgment. (*Id*; O'Rourke Decl. Exs. 11–13.)

The Republic then appealed the Trial Court's decision to the Court of Appeal of England and Wales (the "Appellate Court"). (Compl. ¶ 48.) On appeal, the Republic raised a series of points relevant to liability but *did not challenge* the Trial Court's interpretation of Section 4.9 of the Indenture or its determination that Plaintiffs, pursuant to that section, are entitled to enforce the Judgment in their own right as if they were "Holders." (O'Rourke Decl. ¶ 29 & Ex. 14–15.) On June 12, 2024, the Appellate Court dismissed Argentina's appeal. (Compl. ¶¶ 52-53; O'Rourke Decl. ¶ 33 & Ex. 18.)

On June 21, 2024, the Appellate Court further issued an order (the "Appellate Court Judgment" and together with the Judgment, the "English Judgment") affirming the Republic's obligations to make monetary payments as under the Judgment, but partly modifying them to (i) increase the post-judgment interest all Holders of the Securities are entitled to on the 2013 Payment

Amount by an additional 3% for the period October 25, 2023 to June 21, 2024 (the "Appeal Part 36 Entitlements"), and (ii) require the Republic to pay Plaintiffs costs of the appeal. (Compl. Ex. 2 ¶¶ 2(a), 4–6.) The Appeal Part 36 Entitlements were awarded because Plaintiffs, on October 3, 2023, made a further offer under Part 36 of the English Civil Procedure Rules to settle the proceedings, which was again rejected by the Republic. This offer was made on behalf of Plaintiffs *and* the Trustee (thus for the entire class of beneficial owners of the Securities). As the Appellate Court found, the Appeal Part 36 Entitlements, as distinguished from Plaintiffs' Part 36 Entitlements, are entitlements of "all Holders" of the Securities. (Compl. Ex. 2 ¶ 2; O'Rourke Decl. ¶ 34.)

Afterwards, the Republic applied for leave to appeal to the Supreme Court of the United Kingdom. Again, that was only on the issues of liability that had been the subject of the appeal to the Appellate Court, not the terms of the Judgment relating to Plaintiffs' enforcement rights. (O'Rourke Decl. ¶ 35.) The Supreme Court denied the Republic's application on October 14, 2024. (Compl. Ex. 6.)

Except for the Plaintiffs' costs, and certain sums provided by way of a pre-condition of the Republic's appeal, the Republic has to date refused to pay the English Judgment in the amount of more than EUR 1.5 billion, plus applicable interest, requiring Plaintiffs to pursue this litigation. (Compl. ¶ 71.) Accordingly, in June 2025, Plaintiffs filed this action to recognize and enforce the English Judgment.

## LEGAL STANDARD

The Foreign Sovereign Immunities Act is "the sole basis for obtaining jurisdiction over a foreign state in [U.S.] courts." *Enron Nigeria Power Holding, Ltd. v. Fed. Republic of Nigeria*, 234 F. Supp. 3d 251, 254 (D.D.C. 2015) (Cooper, J.) (quoting *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989)). When a plaintiff invokes an enumerated

exception under the Act, "initially, the plaintiff bears the burden of overcoming the presumption of sovereign immunity 'by producing evidence that an [FSIA] exception applies.'" *Usoyan v. Republic of Turkey*, 438 F. Supp. 3d 1, 10 (D.D.C. 2020) (quoting *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1183 (D.C. Cir. 2013). But once "the plaintiff has met this initial burden of production, the foreign sovereign defendant bears the 'ultimate burden of persuasion' to show that the alleged exception to sovereign immunity does not apply." *Id.* That is because sovereign immunity is an affirmative defense. *Transam. S.S. Corp. v. Somali Democratic Republic*, 767 F.2d 998, 1002 (D.C. Cir. 1985).

"The district court's task in assessing jurisdiction under the FSIA varies depending on whether the defendant presents a legal or a factual challenge." *Simon v. Republic of Hungary*, 77 F.4th 1077, 1116 (D.C. Cir. 2023). Where a jurisdictional dispute challenges only the "legal sufficiency" of the jurisdictional basis, the court should take the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Id.* When a respondent "seeks at the jurisdictional threshold to challenge the factual basis of the court's jurisdiction . . . the court must go beyond the pleadings and resolve" any dispute necessary to the disposition of the motion to dismiss. *Id.*; *see also Feldman v. F.D.I.C.*, 879 F.3d 347, 351 (D.C. Cir. 2018) (cleaned up). Even in such situations, the "court may properly consider allegations in the complaint and evidentiary material in the record," affording plaintiff "the benefit of all reasonable inferences." *Feldman*, 879 F.3d at 351; *see also Am. Freedom Law Ctr. v. Obama*, 821 F.3d 44, 49 (D.C. Cir. 2016).

## **ARGUMENT**

## I.    **THE REPUBLIC HAS EXPRESSLY WAIVED SOVEREIGN IMMUNITY**

Under the FSIA's waiver exception, "[a] foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the foreign state has waived its immunity either explicitly or by implication . . . ." 28 U.S.C. § 1605(a)(1). An

explicit waiver is one which is clear and unambiguous. *World Wide Mins., Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1162 (D.C. Cir. 2002).

Here, the record establishes that the Republic clearly and unambiguously waived sovereign immunity. The Republic's waiver of immunity (the "Waiver") contained in Section 19(a) of the Global Security and Section 12.10(a) of the Indenture is explicit, referring specifically to the FSIA:

> To the extent that the Republic . . . shall be entitled, . . . **in any jurisdiction in which any** … **Other Court is located in which any suit, action or proceeding may at any time be brought solely for the purpose of enforcing or executing any Related Judgment**, **to any immunity from suit, from the jurisdiction of any such court**, from set-off, from attachment prior to judgment, from attachment in aid of execution of judgment, from execution of a judgment or **from any other legal or judicial process or remedy**, and to the extent that in any such jurisdiction there shall be attributed such an immunity, **the Republic irrevocably waives such immunity to the fullest extent permitted by the laws of such jurisdiction, including the United States Foreign Sovereign Immunities Act of 1976**.

(Global Security § 19(a) at R-16; 2010 Indenture § 12.10(a) at 3; 2005 Indenture § 12.10(a) at 55–56.)

This case is covered by the Waiver. There is no dispute that the English Judgment constitutes "a Related Judgment," defined as "a final non-appealable judgment" rendered by a "Specified Court"—that is, the courts of England— in the proceedings against the Republic "with respect to the Securities . . . or the Indenture." (Global Security § 17(a) at R-14; 2005 Indenture § 12.8(a) at 54.) This action was brought for the purpose of enabling the enforcement of the English Judgment in "Other Courts," defined as "any other courts to the jurisdiction of which the Republic

14

is or may be subject[], by a suit upon such judgment." (Global Security § 17(a) at R-15; 2005 Indenture § 12.8(a) at 54.) Argentina concedes that the courts of the District of Columbia are "Other Courts." (MTD 4.)

Confronted with a clear Waiver, the Republic's only response is to invoke an overly restrictive reading of Section 19(b) of the Global Security. That provision, in relevant part, states: "Insofar as this waiver relates to the jurisdiction in which an Other Court is located, the Republic extends it solely for the purpose of enabling the Trustee or a Holder of Securities of this Series to enforce or execute a Related Judgment." (Global Security § 19(a) at R-16.) On the Republic's interpretation, Section 19(b) limits the Waiver, to "suits brought by only the Trustee or a Holder of Securities," which Argentina claims Plaintiffs are neither. (MTD 6, 9–10.) That argument fails for several reasons.

Argentina's argument falls flat in the face of the Republic Acknowledges Clause set forth in Section 11 of the Global Security and Section 4.8 of the Indenture, which the Republic avoids referring to in its brief. In that clause, Argentina "expressly" acknowledged that the beneficial owners of the Securities will be regarded by it as "Holders" as if the Securities had been issued to such beneficial owners for all purposes relating to "a right of any Holder to pursue a remedy under the Indenture . . . or the Securities." (Global Security § 11 at R-13; 2005 Indenture § 4.8 at 25.) Argentina concedes a Holder holds a "right to invoke the Republic's waiver of sovereign immunity in this Court." (MTD 1; 2005 Indenture § 4.8 at 4.) Accordingly, by operation of the Republic Acknowledges Clause, that same right unequivocally extends to the Plaintiffs as beneficial owners of the Securities.

The Republic's argument to the contrary ignores and improperly reads out the Republic Acknowledges Clause from the Global Security and the Indenture, in contravention of the axiom

that contracts "be read as a whole, with meaning given to every provision." *Kiska Constr. Corp. v. Wash. Metro. Area Transit Auth.*, 321 F.3d 1151, 1163 (D.C. Cir. 2003); *see also United States v. Ins. Co. of N. Am.,* 83 F.3d 1507, 1511 (D.C. Cir. 1996) (noting the "cardinal principle of contract construction: that a document should be read to give effect to all its provisions").

This conclusion is similarly warranted when one applies English law to construe the relevant terms and provisions of the Global Security and the Indenture.  While the ultimate determination as to the application of the FSIA waiver is a question of federal law, the Republic's Waiver is found in the binding contracts whose terms are required to be "construed in accordance with the laws of England and Wales."  (Global Security § 16 at R-14; 2005 Indenture § 12.7.) Under these circumstances, the Court may look to English law in discerning whether the Republic intended to treat beneficial owners of the Securities as if they are "Holders" for the purposes of its Waiver.  *See GOT I, LLC and Kids II, Inc. v. XRT, Inc. et al.*, 2019 WL 12529020, at *6 (N.D. Ga. Jan 18, 2019) (even though federal law applied to the broader issue of whether to admit expert testimony, the court turned to Delaware law in reading the relevant contract, since it was governed by the laws of Delaware.); *Zimmer Orthopaedic Surgical Prods., Inc. v. Haemonetics Corp.*, 2005 WL 8172105, at *3 (N.D. Ohio Dec. 6, 2005) ("Though federal law governs the general arbitrability of a dispute, when interpreting contractual arbitration provisions, courts apply the law of the state governing the contract at issue." (citation omitted)); *accord Capital Ventures Intern. v. Republic of Argentina*, 552 F.3d 289, 294 n.4 (2d Cir. 2009) (applying federal principles of contract interpretation to the offering circulars containing Argentina's waiver of sovereign immunity and governed by German law, as the "parties have not presented [the court] with anything to suggest that German law would alter the essential analysis.  Indeed, they have not cited any German law with respect to any aspect of this case").

16

To that end, the Rt. Hon. Lord Neuberger of Abbotsbury ("Lord Neuberger"), who served as President of the United Kingdom Supreme Court from 2012 to 2017, has submitted a declaration ("Neuberger Decl.") to assist the Court in understanding English law principles of contract interpretation and their application to the provisions relevant to the Republic's Waiver. (Neuberger Decl. ¶¶ 2, 4, 7.)  Lord Neuberger first explains that when interpreting contractual terms, the English courts' task is "to identify the objective intention of the parties" by assessing the meaning of the relevant words in consideration of elements of the wider context, including "(i) the natural and ordinary meaning of the section; (ii) other relevant provisions in the contract; (iii) the overall purpose of the section and the contract; (iv) the facts and circumstances known or assumed by the parties at the time that the document was executed; [and] (v) commercial common sense."  (Neuberger Decl. ¶ 12.)

Applying these principles, Lord Neuberger notes that the last sentence of Section 19(b) of the Global Security (being the central focus of the Republic's argument here) "must be read in light of and consistently with other provisions of [the Global Security], and in particular the last sentence of Section 11, that is, the Republic Acknowledges Clause, as well as the rest of Section 19.  (Neuberger Decl. ¶ 17.)  When properly construed as whole, Lord Neuberger concludes that:

> In summary, my answer to the Question is that an English Court would conclude that . . . [t]he Republic's waiver of sovereign immunity . . . extends to proceedings brought by the Plaintiffs as "*beneficial owners*" of the relevant Securities to seek enforcement of a "*Related Judgment*", namely the judgment of Mr Justice Picken in the English High Court as varied by the Court of Appeal, in an "*Other Court*"[.]

(*Id.* ¶ 8(a).)  He further concludes that "the Republic has waived its immunity to the Plaintiffs' claims in the Complaint (which, it is common ground, is before an '*Other Court*', in this case the DC District Court)."  (*Id.* ¶ 8(b).)

In relation to Argentina's immunity objection, Lord Neuberger opines that the Republic's position that Section 19(b) limits the entitlement to rely on the Republic's Waiver to the legal title Holder (and not beneficial owners of the Securities) would "give rise to an inconsistency" with the contractual provision in the same Global Security that a "beneficial owner is to be regarded 'as if Certificated Securities had been issued to it' in circumstances where Certificated Securities would 'in all respects be entitled to the same benefits as other Debt Securities under the Indenture and the [Global Security].'"  (*Id.* ¶¶ 18-22 (quoting Global Security § 11 at R-13 and Form B to the 2005 Indenture at B-2).)  He construes Section 19(a) and (b) alongside other key provisions and explains that Section 19(b), contrary to the Republic's suggestion, cannot be read to reduce any benefits or rights that the Global Security or Indenture have granted elsewhere. (*Id.* ¶ 35.)  This includes the right of beneficial holders to benefit from the Republic's Waiver for purposes of proceeding in this case.  (*Id.* ¶¶ 22, 28–29.)

Following a detailed analysis of all of the relevant provisions in the governing documents, Lord Neuberger concludes as follows:

> [I]nterpreting the second sentence of [Section] 19(b) in the light of and consistently
> with [the Republic Acknowledges Clause], and also in the context of [Section] 19
> as a whole, it seems to me that: (a) The Plaintiffs are to be treated as having the
> same rights as "*Holder[s]*", and accordingly fall within the scope of the waiver and
> [Section] 19(a); and (b) The last sentence of [Section] 19(b) does not have the
> meaning for which the Republic contends, and in particular does *not* operate to

exclude parties such as the Plaintiffs from the ambit of the waiver where enforcement is sought in an "*Other Court*".

(*Id.* ¶ 37.)

There also is ample other evidence of the Republic's intention to treat the Plaintiffs as Holders within the meaning of the governing documents. For instance, other parts of the Global Security are drafted consistently with the Republic Acknowledges Clause, treating beneficial owners of the Securities as "Holders." (*Compare* Global Security § 2(e) at R-6 ("All money paid to the Trustee pursuant to this Security shall be held by it in trust exclusively for itself and **the Holders of this Security in accordance with their respective interests** to be applied by the Trustee to payments due on this Security . . . ." (emphasis added)) *with id.* § 2(a) at R-6 ("The Republic shall make such payments by . . . directing the Trustee to hold these funds in trust for the Trustee and **the beneficial owners of this Security in accordance with their respective interests**" (emphasis added)).)

Further, the plain language of the Global Security refers to "Holders" in the plural, laying bare Argentina's argument, (MTD 1), that the Global Security recognizes only one Holder, which it claims to be the Nominee. (Global Security § 5(b) at R-10 ("**Holders holding in the aggregate at least 50% in notional amount of the then *Outstanding Securities*** may waive any existing defaults on behalf of all Holders of Securities." (emphasis added)); § 1(e) at R-4 ("All calculations made by the Ministry of Economy hereunder shall be binding on . . . **all Holders of this Security**, absent bad faith, willful misconduct or manifest error on the part of the Ministry of Economy." (emphasis added)); § 21 at R-21 (entitled "**Holders'** Meetings").) These references to "Holders" naturally refer to the beneficial holders of the Securities, not just the Nominee.

What is more, throughout the English proceedings, the Republic also consistently advanced the position that the term "Holders" includes beneficial owners of the Securities. It recognized Plaintiffs' ability to pursue the English proceedings under Sections 4.8 and 4.9 of the Indenture and Section 11 of the Global Security, all of which provides the **Holder's** right to sue the Republic under the Indenture or the Securities, including for the enforcement of the Republic's payment. (2005 Indenture § 4.8 at 24–25; *id*. § 4.9 at 25; Global Security § 11 at R-13.) The Republic also affirmatively argued that the Plaintiffs, as Holders, were bound by its Ministry of Economy's 2013 calculations to deny its liabilities. (Re-Re-Amended Defense of Argentina ¶¶ 46.3.3–46.3.4 at 36; ¶ 4.10 at 4; ¶¶ 18.7–18.8 at 13.)

Lord Neuberger also observes that the Republic "would . . . be barred from contending in any English proceedings that the Plaintiffs were not, at the very least, to be treated as '*Holders*' within the meaning of" Sections 4.8 and 4.9 of the Indenture. (Neuberger Decl. ¶ 24 (internal quotation marks omitted).) To Lord Neuberger, this "seems . . . at the very least to sit uncomfortably" with the Republic's suggestion before this Court that Plaintiffs should not be treated as if they are "Holders" for purposes of Section 19 of the Global Security. (*Id.* ¶ 25.) He further opines that "[e]ven setting aside the inconsistency with [the Republic Acknowledges Clause] which [the Republic's] approach would entail, the resultant piecemeal limitation of a beneficial owner's rights would be both arbitrary and inexplicable." (*Id*. ¶ 26.)

As such, the Republic's argument here that Plaintiffs are *not* Holders and thus cannot invoke its FSIA waiver is at odds with its own conduct in the English proceedings. It also cannot be reconciled with the clear terms of the Indenture and the Global Security that deem beneficial owners as "Holders" of the Securities for purposes of seeking a remedy against the Republic.

Depriving Plaintiffs of the right and benefit to rely on the Republic's Waiver in enforcing the English Judgment before this Court would render these various provisions of the Indenture and the Global Security superfluous, a result that should be avoided. *See Capital Ventures Intern.*, 552 F.3d at 294 (finding Argentina's explicit waiver). Lord Neuberger agrees with this conclusion and opines that the Republic's position here involves "a decidedly uncommercial" and "perverse" reading of the Indenture and the Global Security that would render the rights of beneficial owners "effectively nugatory." (Neuberger Decl. ¶ 28.) He reasons that the Republic's reading of Section 19(b) would deprive beneficial owners of any real remedy, notwithstanding its "express acknowledgement of the rights of beneficial owners with respect to the rights of Holders to vindicate entitlement under the Securities." (*Id.*)

Equally unsustainable is the Republic's contention that "[c]ourts consistently enforce the specific contractual distinction between 'Holders' and beneficial owners." (MTD 4.) Setting aside that the Republic exclusively relies on out-of-circuit cases to make this argument, these cases are inapposite, because they involved agreements that explicitly limit a beneficial owner's enforcement right. For instance, the agreements in the cases cited by Argentina provide that "only Certificateholders may bring claims under the agreements—beneficial owners may not," *Commerzbank AG* v. *Wells Fargo Bank, N.A.*, 2024 WL 4554081, at *4 (2d Cir. Oct. 23, 2024), or others require "a cumbersome mechanism by which the beneficial owners of the certificates can be recognized as holders of the certificates[.]" *Phoenix Light SF Ltd.* v. *Deutsche Bank Nat'l Tr. Co.*, 172 F. Supp. 3d 700, 711 (S.D.N.Y. 2016). The key agreements in this case have no such requirements. The Indenture and the Global Security directly equate beneficial holders as "Holders" for purposes of pursuing any remedies against the Republic.

Further, as the Republic acknowledges in the Motion (MTD 4-5), there was a prior litigation between the Republic and "[d]ifferent beneficial owners of similar dollar-denominated securities (issued under New York law and in U.S. currency)," which presented the United States District Court for the Southern District of New York with an opportunity to analyze the terms of the Indenture and the Global Security (although governed by New York law).  *Aurelius Capital Master, Ltd. v. Republic of Argentina*, 728 F.Supp.3d 274, 285-87 (S.D.N.Y. 2024).[5]  The court there, too, observed that Holders under the Indenture and the Global Security include "beneficial holders."  *Id.* at 280.  Argentina did not challenge that view but rather attempted to use it for its benefit in *Aurelius*, as discussed further below.

For these reasons, the Court should, respectfully, find that this action falls within the Republic's Waiver.  The Republic has waived sovereign immunity over an enforcement action, like this one, by a Holder, and the Republic "expressly" agreed to grant this same right to beneficial holders of the Securities, like the Plaintiffs here.  (Global Security § 11 at R-13; 2005 Indenture § 4.8 at 25.)

## II. THE REPUBLIC IS BARRED FROM ARGUING THAT PLAINTIFFS ARE NOT "HOLDERS"

In *New Hampshire v. Maine*, the Supreme Court highlighted the importance of protecting judicial integrity by barring parties from changing positions based on convenience. 532 U.S. 742, 749-50 (2001).  Courts in this Circuit have consistently applied this doctrine. *See Moses v. Howard Univ. Hosp.*, 606 F.3d 789 (D.C. Cir. 2010) (affirming the application of judicial estoppel where a litigant took inconsistent positions in bankruptcy and district court proceedings); *Davis v. D.C.*,

---

[5]        The dispute there related to the plaintiffs' compliance with the procedural requirements of the no-action clause set out in Section 4.8 of the Indenture and Section 11 of the Global Security, which is not at issue here.  *Aurelius Capital Master*, 728 F.Supp.3d at 284.

925 F.3d 1240 (D.C. Cir. 2019) (affirming the application of judicial estoppel where litigants inconsistently raised Title VII claims).

Judicial estoppel may also arise from a position that a party maintained in a foreign court. *Rapture Shipping, Ltd. v. Allround Fuel Trading B.V.*, 350 F.Supp.2d 369, 374-75 (S.D.N.Y. 2004); *GT Beverage Co. LLC v. Coca Cola Co.*, 2010 WL 11595832, at *5 (C.D. Cal. Aug. 2, 2010); *A.I. Trade Finance, Inc. v. Centro Internationale Handelsbank AG*, 926 F.Supp. 378, 389-90 (S.D.N.Y. 1996) (judicial estoppel applied where a party took a position that was "wholly inconsistent" with its prior position taken in an Austrian court).

Courts in this Circuit and beyond have applied the judicial estoppel doctrine according to a three part inquiry: (1) whether a party's later position is inconsistent with an earlier one, (2) whether the party succeeded in persuading a court to accept its earlier position, and (3) whether the party making an inconsistent argument would derive an unfair advantage or impose an unfair detriment on the opposing party if the court does not preclude the inconsistency. *Moses*, 606 F.3d at 798 (citing *New Hampshire*, 532 U.S. at 750-51). Here, the *Moses* factors weigh in favor of the Court applying judicial estoppel to bar the Republic from arguing that Plaintiffs are not "Holders" within the meaning of the Indenture and the Global Security.

First, in the English proceedings, the Republic accepted that Plaintiffs, as beneficial holders of the Securities, were entitled to enforce the terms of the Indenture and the Global Security pursuant to the terms conferring such rights on "Holders." (O'Rourke Decl. ¶¶ 10–13; Re-Re-Amended Defense of Argentina ¶¶ 56-57 at 50.) It then went further, affirmatively arguing that Plaintiffs should be bound by the calculations conducted by its Ministry of Economy, reasoning that "Holders" are bound by those calculations in the absence of the Republic's wrongdoing, which

it denied. (Re-Re-Amended Defense of Argentina 46.3.3–46.3.4 at 36; ¶ 4.10 at 4; ¶¶ 18.7–18.8 at 13.) Hence, the first factor in *Moses* is present.

Second, Plaintiffs' Holder status was adopted by the English courts throughout the entirety of the proceedings. Having been advanced by Argentina, used offensively by it, and adopted by the English courts, it should be considered as a successful position advanced by the Republic for purposes of establishing the second *Moses* factor. *Hausler v. JP Morgan Chase Bank, N.A.*, 127 F.Supp.3d 17, 36 (S.D.N.Y. 2015) (applying judicial estoppel to bar a party from taking an inconsistent position, even though the prior action did not result in a "favorable judgment" for the party being estopped, because judicial estoppel is a "flexible doctrine" and the court in the prior action "adopted" the position being contradicted).

Third, the Republic seeks to disavow its earlier position to invoke sovereign immunity to the detriment of Plaintiffs, as required by the third *Moses* factor. This convenient change of positions is precisely what the judicial estoppel doctrines bars. Having accepted that Plaintiffs are "Holders" in the English proceedings, the Republic cannot now argue the opposite to avoid this Court's jurisdiction and evade the enforcement of the English Judgment to prejudice Plaintiffs' ability to enforce it in this Court. Allowing the Republic to do so "creates the perception that either the first or the second court was misled, thus posing a threat to judicial integrity." *Moses*, 606 F.3d at 792 (citing *New Hampshire*, 532 U.S. at 750); *Hausler*, 127 F.Supp.3d at 36 (finding that "the primary purpose of judicial estoppel is to protect the judicial process").

Reinforcing the application of judicial estoppel is the Republic's actions in *Aurelius Capital Master, Ltd. v. Republic of Argentina*, which the Republic refers to as "related litigation." (MTD 4-5.) The Republic cites *Aurelius*, in part, to show that the claims there by certain "beneficial owners" of "similar" securities were dismissed on the basis of "the Global Security's

no-action clause." (*Id*. at 4-5.)  It omits that it prevailed in that action by arguing that the beneficial owners there were "Holders" subject to the no-action clause that applied to "Holders." *Aurelius Capital Master,* 728 F.Supp.3d at 287.  This Jekyll and Hyde approach to litigation before sister federal courts should not be countenanced.  *See Davis*, 925 F.3d at 1256.

Relatedly, the Republic is also precluded from advancing its dismissal argument by the doctrine of *res judicata*.  "[A] federal court applies federal law on claim and issue preclusion in non-diversity cases." *Hurst v. Socialist People's Libyan Arab Jamahiriya*, 474 F. Supp. 2d 19, 32 (D.D.C. 2007).  Under *res judicata*, or claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Drake v. F.A.A.*, 291 F.3d 59, 66 (D.C. Cir. 2002) (quoting *Allen v. McCurry,* 449 U.S. 90, 94 (1980)); *I.A.M. Nat'l Pension Fund, Benefit Plan A v. Indus. Gear Mfg. Co*., 723 F.2d 944, 949 (D.C.Cir. 1983) (noting that *res judicata* "forecloses all that which might have been litigated previously"); *Morgan v. United States Parole Commission*, 304 F.Supp.3d 240, 246 (D.D.C. 2016) ("The res judicata doctrine bars relitigation of claims or issues that were or could have been litigated in a prior action." (citation omitted)).

*Res judicata* applies "if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Gresham v. D.C.*, 66 F.Supp.3d 178, 187 (D.D.C. 2014). "Whether two cases implicate the same cause of action turns on whether they share the same nucleus of facts," *Drake,* 291 F.3d at 66 (internal quotation marks and citation omitted), "for it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies." *Page v. United States,* 729 F.2d 818, 820 (D.C. Cir. 1984).

This Court has also ruled that "[i]nternational comity provides that a U.S. court should give full effect to a foreign judgment that has been rendered with impartiality and due process." *United States v. Sum of $70,900,605, et al.*, 991 F.Supp.2d 154, 168 (D.D.C. 2013) (internal quotation marks omitted); *International Trading and Indus. Inv. Co. v. DynCorp Aerospace Technology*, 763 F.Supp.2d 12, 24 (D.D.C. 2011) (observing that claim preclusion has traditionally applied to foreign judgments that align with the principles of comity); *Hurst*, 474 F.Supp.2d at 33 (collecting cases where "federal courts have permitted the use of a foreign judgment to estop relitigation of an issue"); *see also Donnelly v. FAA,* 411 F.3d 267, 271 (D.C.Cir. 2005) (observing that "principles of comity suggest that [a foreign] judgment should be given weight as *prima facie* evidence of the facts underlying it").

"It is incontrovertible that the English judicial system provides impartial tribunals and procedures compatible with the requirements of due process of law." *Society of Lloyd's v. Edelman*, 2005 WL 639412, at *3 (S.D.N.Y. Mar. 21, 2005).  The Republic and Plaintiffs were parties to the English proceedings, which resulted in "a final, valid judgment on the merits . . . by a court of competent jurisdiction."  *Gresham*, 66 F.Supp.3d at 187.  This action is "based on the same nucleus of facts" as the English proceedings, *Page*, 729 F.2d at 820, as it seeks the recognition and enforcement of the English Judgment.  Also, the Republic's "Plaintiffs are not Holders" argument arises from the same "operative facts" that it "knew of" during the English proceedings, including that Plaintiffs are beneficial owners of the Securities, while they are registered in the name of the Nominee.  *RSM Production Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 800 F.Supp.2d 182, 192–93 (D.D.C. 2011) (finding that the identity requirement was satisfied where a party "knew of the relevant, operative facts it asserts in this case" at the time of a prior action).

Accordingly, this Court should find that *res judicata* applies to bar the Republic from asserting that the Plaintiffs are not Holders of the Securities within the meaning of the governing indenture documents and the Waiver clause in particular. The Republic could have pressed its "Plaintiffs are not Holders" argument before the English courts to argue that Plaintiffs were not entitled to commence suit against it or that they were not entitled to enforce the English Judgment in their own right.  It chose not to do so, and must now bear the consequences of that decision.[6]  Taking the very same facts at issue in the English proceedings, the Republic now wants to switch "horses" and argue that Plaintiffs are not to be considered "Holders" of the Securities for purposes of the Waiver even though it previously accepted them as Holders.  It does so to avoid the recognition and enforcement of the English Judgment that Plaintiffs obtained, and the English courts empowered them to enforce, based on the rights conferred to "Holders."  "This is precisely what is barred by *res judicata*."  *Apotex, Inc. v. Food & Drug Admin.*, 393 F.3d 210, 217–18 (D.C. Cir. 2004).

## CONCLUSION

For the foregoing reasons, this Court should deny the Republic's Motion to Dismiss in its entirety and find that the Court has subject matter jurisdiction under the FSIA's waiver exception.

---

[6]    As a matter of English law, the Republic would not be permitted to re-litigate the Plaintiffs' entitlement to enforce the Judgment in full, including all Judgment Sums.  Any argument by the Republic to deny this entitlement would amount to "an abuse of process" under English law, because the issue has been already determined by the English courts.  (Neuberger Decl. ¶ 41.)

       */s/ David M. Orta*
David M. Orta (D.C. Bar No. 462083)
Daniel Salinas-Serrano (D.C. Bar No. 974159)
Julianne F. Jaquith (D.C. Bar No. 1026471)
(*pro hac vice*)
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
555 13th Street NW
Suite 600
Washington, D.C. 20004
(202) 538-8000
(202) 538-8100 (fax)
davidorta@quinnemanuel.com
danielsalinas@quinnemanuel.com
juliannejaquith@quinnemanuel.com

*Counsel for Plaintiffs Palladian Partners, L.P.,*
*HBK Master Fund L.P., Hirsh Group LLC, and*
*Virtual Emerald International Limited*