**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
-------------------------------------------------------  x
PALLADIAN PARTNERS, L.P.; HBK                            :
MASTER FUND L.P.; HIRSH GROUP LLC;                       :
and VIRTUAL EMERALD                                      :
INTERNATIONAL LIMITED,                                   :
                                                        :
              Plaintiffs,                                :     Civil Action No. 1:25-cv-01954-CKK
                                                        :
       - against -                                      :
                                                        :
THE REPUBLIC OF ARGENTINA,                               :
                                                        :
              Defendant.                                 :
-------------------------------------------------------  x
```

**DECLARATION OF HARRIET ROSE MIDDLEDITCH**

I, Harriet Rose Middleditch, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury as follows:

1. I am a solicitor qualified to practice in England and Wales, an attorney admitted to the Bar of the State of New York, and European Counsel in the London office of Sullivan & Cromwell LLP, counsel to the Republic of Argentina (the "Republic") in these proceedings. I have been closely involved in the proceedings brought by Plaintiffs against the Republic in the courts of England and Wales (the "English Proceedings") since their inception in 2019.

2. I submit this declaration in connection with the Republic's Reply in Support of its Motion to Dismiss ("Mot.") the Complaint ("Compl.") filed in the above-captioned action and in response to certain assertions concerning the English Proceedings raised in Plaintiffs' Opposition ("Opp.") and in the declaration of Aidan Alexander O'Rourke dated March 2, 2026 (the "O'Rourke Declaration").

3.    I have personal knowledge of the matters set forth in this declaration and believe them to be true and correct based on my own involvement in this case, my professional experience, and my review of the relevant documents referred to herein.

4.    All exhibits attached hereto are true and accurate copies, or true and accurate excerpts of such copies.    References to "Exhibit" and "Ex." are to the exhibits accompanying this declaration.

5.    Unless otherwise noted, defined terms have the meaning given to them in the O'Rourke Declaration.

## I.    THE SECURITIES

6.    The Securities are held through an intermediated structure in which legal title remains with the registered holder, The Bank of New York Depositary (Nominees) Limited. As explained in the 2005 Prospectus for the Securities (an excerpt of the relevant portions is attached as **Exhibit 1**), the "clearing system keeps records of the ownership and transfer of beneficial interests in the global security by its participants" (*i.e.*, "[i]nstitutions that have accounts with the clearing system, such as securities brokers and dealers"), and these participants in turn "keep records of the ownership and transfer of beneficial interests in the global security by other persons, such as their customers."  (Ex. 1 (2005 Prospectus) at 198.)

## II.    JURISDICTIONAL BASIS FOR THE ENGLISH PROCEEDINGS

7.    The pleaded jurisdictional basis for the English Proceedings was Section 17 of the Global Security (and the equivalent provision at Section 12.8 of the Indenture).  (O'Rourke Ex. 1 (Re-Re-Amended Particulars of Claim) ¶ 8.)  Section 17(a) provides that "the Republic irrevocably submits to the jurisdiction of the courts of England and the courts of the Republic (each, a 'Specified Court') over any suit, action or proceeding against it or its properties, assets or revenues with respect to the Securities of this Series, the GDP-Linked Securities Authorization or

the Indenture (a 'Related Proceeding')." (Compl. Ex. 5 (2005 Global Security) § 17(a) at R-14–R-15.)

8.    Section 19(a) of the Global Security states that the Republic "irrevocably waives" its "immunity from suit" "to the extent that the Republic . . . shall be entitled, in any jurisdiction in which any Specified Court is located, in which any Related Proceeding may at any time be brought against it or any of its revenues, assets or properties . . ." (*Id.* § 19(a) at R-16.) Section 12.10 of the Indenture contains similar language.

9.    Consistent with Sections 17(a) and 19(a) of the Global Security, the Republic did not object to Plaintiffs' claims in the English Proceedings on jurisdictional or sovereign immunity grounds. The Republic's submission to jurisdiction and waiver of sovereign immunity in *the English court* was not in dispute. None of the parties' pleadings, submissions at trial, or post-judgment submissions addressed sovereign immunity or referenced the waiver provision at Section 19 of the Global Security.

10.    Likewise, the Republic's waiver of sovereign immunity under Section 19(b) for actions to enforce a "Related Judgment" (which is defined in Section 17(a) to mean "a final non-appealable judgment in any Related Proceeding") was not addressed in the English Proceedings. The Republic did not take a position on this issue in the English Proceedings.

## III.    THE PLEADINGS IN THE ENGLISH PROCEEDINGS

11.    Plaintiffs contend that the Republic equated Plaintiffs with "Holders" of the Securities with respect to two issues raised in the English Proceedings: (i) Plaintiffs' contractual standing under Sections 4.8 and 4.9 of the Indenture; and (ii) the "binding effect" provisions in the Global Security. (Opp. at 8.) Below, I explain how each issue was dealt with in the parties' pleadings in the English Proceedings.

***The Trustee Priority Dispute***

12. The first issue concerned Plaintiffs' contractual standing to sue under Sections 4.8 and 4.9 of the Indenture (the "Trustee Priority Dispute").

13. Section 4.8 of the Indenture (identical in relevant terms to Section 11 of the Global Security) states: "Except as provided in this Section 4.8 and Section 4.9 of this Indenture, no Holder of any Debt Securities of any Series shall have any right by virtue of or by availing itself of any provision of this Indenture or of the Debt Securities of such Series to institute any suit, action or proceeding in equity or at law upon or under or with respect to this Indenture or of the Debt Securities, or for any other remedy hereunder or under the Debt Securities, unless" five preconditions to bringing suit are satisfied. (Compl. Ex. 3 (2005 Indenture) § 4.8 at 24–25.)

14. In other words, Section 4.8 provides two exceptions to the general prohibition against lawsuits by Holders. Under the first exception (which cross-references Section 4.9), Holders may bring claims for "payment of principal of and interest on" the Securities. (*Id.* §§ 4.8–4.9 at 24–25.) Under the second exception, Holders may "institute any suit, action or proceeding in equity or at law" or "for any other remedy" under the Securities where they satisfied the five preconditions to bringing suit. (*Id.* § 4.8 at 24–25.) Under such circumstances, Holders may only sue "for the equal, ratable and common benefit of all Holders." (*Id.*)

15. Section 4.8 also "expressly acknowledges, with respect to the right of any Holder to pursue a remedy under this Indenture or the Debt Securities, the right of any beneficial holder of Debt Securities to pursue such remedy with respect to the portion of the Global Security that represents such beneficial holder's Debt Securities as if definitive Debt Securities had been issued to such Holder." (*Id.*)

16.     In the English Proceedings, Plaintiffs asserted, in a written submission filed shortly before the close of trial (a copy of which is attached as **Exhibit 2**), that this acknowledgment sentence applies to "both the first part of Section 4.8 (and Paragraph 11 of the [Global Security]) and under Section 4.9." (Ex. 2 (Skeleton for Issue Concerning the Trustee) ¶ 30 (emphasis in original).)

17.     In the English Proceedings, the Plaintiffs and the Trustee disputed whether any monetary relief ordered by the English Trial Court in respect of the year 2013 would be granted solely to the Trustee for the benefit of all beneficial owners under Section 4.8 of the Indenture (and the corresponding Section 11 of the Global Security), or additionally to Plaintiffs in their own right pursuant to Section 4.9 of the Indenture. (O'Rourke Ex. 10 (April 5, 2023 Judgment) ¶ 277.) Specifically, Plaintiffs and the Trustee disagreed as to (i) whether Section 4.8 has a priority that may preempt a claim brought under Section 4.9 and (ii) whether Section 4.9 refers to a right to claim the Payment Amount (which, as defined and set forth in the Securities, is contingent on the Republic's gross domestic product ("GDP")) or only principal and interest payments. (*Id.* ¶¶ 284–85, 289, 296–98.)

18.     Mr. O'Rourke notes that Plaintiffs brought their claims in the English Proceedings on the basis of Sections 4.8 and 4.9 of the Indenture, and that "the Republic never disputed the Plaintiffs' ability to pursue their claims as Holders under Sections 4.8 and 4.9 of the Indenture." (O'Rourke Decl. ¶¶ 10, 13.) With respect, Mr. O'Rourke misstates the Republic's positions.

19.     In its Defence, the Republic did not contest Plaintiffs' ability to bring claims under the Securities in the English Proceedings under Section 4.8 of the Indenture. (O'Rourke Ex. 2 (Re-Re-Amended Defence) ¶ 57.) Notably, the final sentence in Section 4.8 allows

beneficial owners to "pursue a remedy" against the Republic "as if" they were Holders. Moreover, Plaintiffs pleaded and evidenced that they had complied with Section 4.8's preconditions to bringing suit before they commenced the English Proceedings. (O'Rourke Ex. 1 (Re-Re-Amended Particulars of Claim) ¶ 53.)

20. Similarly, the Republic did not dispute that beneficial owners can pursue claims under Section 4.9, but it stated that Section 4.9 of the Indenture does not apply to Plaintiffs' claims for the 2013 Payment Amount because "the claim to receive a Payment Amount is not a claim for principal or interest on the Securities." (O'Rourke Ex. 2 (Re-Re-Amended Defence) ¶ 56.) The Republic, however, did not pursue this point at trial given that Plaintiffs had a sufficient basis to proceed under Section 4.8. Indeed, Mr. Justice Picken of the English Trial Court noted in his judgment dated April 5, 2023 (the "April 2023 Judgment"), that "discrete issue" was unrelated to the Republic's defence; it arose between "the Claimants and the Second Defendant ('Bank of New York Mellon' acting as 'the Trustee')." (O'Rourke Ex. 10 (April 5, 2023 Judgment) ¶ 6.)

21. The question of whether Plaintiffs may be treated "as if" they were Holders for all purposes under the Indenture and Global Security was not raised in any of the parties' pleadings, nor was the question of whether Plaintiffs may be treated "as if" they were Holders for the purpose of the Republic's waiver of sovereign immunity in an "Other Court."

### *The "Binding Effect" Provisions*

22. The second issue Plaintiffs point to as evidence that the Republic accepted their status as Holders in the English Proceedings relates to the meaning of two "binding effect" provisions in the Global Security. The language is in the Global Security's definition of "Payment Amount," which provides that "[a]ll calculations made by the Ministry of Economy hereunder shall be binding on the Trustee . . . and all Holders of this Security, absent bad faith, willful

misconduct or manifest error on the part of the Ministry of Economy." (Compl. Ex. 5 (2005 Global Security) § 1(e) at R-4.)  The definition of "Excess GDP" also includes a clause stating that "[a]ll calculations necessary to determine Excess GDP . . . will be performed by the Ministry of Economy . . . and such calculations shall be binding on . . . all Holders of this Security, absent bad faith, willful misconduct or manifest error on the part of the Ministry of Economy."  (*Id.* § 1(e) at R-3–R-4.)

23.     In its Defence first filed on November 6, 2019 and its subsequent application for summary judgment filed on March 4, 2020 (a copy of which is attached as **Exhibit 3**), the Republic argued that the "binding effect" provisions applied to all calculations made by the Ministry of Economy in respect of the 2013 Payment Amount.  (O'Rourke Ex. 2 (Re-Re-Amended Defence) ¶¶ 42, 46.3.2; Ex. 3 (Summary Judgment Application) at 1.)

24.     However, the question of whether Plaintiffs were "Holders" for the purpose of the "binding effect" clause was not in issue at the summary judgment hearing—nor was it addressed by Mrs. Justice Cockerill in her summary judgment decision (a copy of which is attached as **Exhibit 4**).  In fact, the only issue in dispute at that hearing (insofar as the "binding effect" provisions were concerned) was whether those provisions applied to all calculations made by the Ministry of Economy in respect of the "Payment Amount" (as defined in the Global Security), or whether they applied only to certain calculations.  (Ex. 4 (Summary Judgment Decision) ¶¶ 48–52.)  Mrs. Justice Cockerill denied the Republic's summary judgment motion.  (*Id.* ¶¶ 84–85)

25.     The Republic ultimately did not pursue any argument based on the "binding effect" provisions at trial.  The order issued by Mr. Justice Picken following trial on June 9, 2023 (the "Trial Court Order") records that "the Republic ha[d] confirmed in its Written Opening dated 12 October 2022 that it was not pursuing its case that the 'binding effect' provisions of the

Securities apply to the question of whether the Payment Conditions have been satisfied."  (Compl. Ex. 1 (June 9, 2023 Order), Sixth Recital.)

## IV.    THE ISSUES AT TRIAL IN THE ENGLISH PROCEEDINGS

26.    The issues litigated at trial in the English Proceedings concerned:  (1) the construction of a provision in the Global Security known as the "Adjustment Provision"; (2) the alternative case advanced by Plaintiffs that the Republic acted in bad faith in producing certain GDP data in March 2014; and (3) the Trustee Priority Dispute.  The first and the third issues were determined in favor of Plaintiffs.  The second issue was not addressed in the April 2023 Judgment on the basis of the English Trial Court's ruling on the first issue.  (O'Rourke Ex. 10 (April 5, 2023 Judgment) ¶ 2.)

27.    Of these three issues, only the Trustee Priority Dispute involved contractual provisions that contain the defined term "Holder."  However, as explained above, that dispute had nothing to do with the jurisdictional issue before this Court—*i.e.*, whether Plaintiffs are Holders for the purpose of the Republic's waiver of sovereign immunity in relation to actions seeking to enforce a "Related Judgment" in "Other Courts" under Section 19 of the Global Security.

28.    At trial, the Trustee Priority Dispute was litigated only between Plaintiffs and the Trustee.  Plaintiffs submitted a separate written submission shortly before the end of trial to address this dispute on November 14, 2023, entitled "Claimants' Skeleton for Issue *Concerning the Trustee*."  (Ex. 2 (emphasis added).)  The Trustee also filed its written closing submission on this issue on the same day, a copy of which is attached as **Exhibit 5**.  The Republic, on the other hand, did not make any submissions on this issue at trial.

29.    Plaintiffs' "Skeleton for Issue Concerning the Trustee" further confirms that the Trustee Priority Dispute concerned contractual standing to sue, not the scope of the Republic's waiver of sovereign immunity for enforcement actions.  Specifically, Plaintiffs asserted that under

the Securities, "[a] decision has been taken, in the form of Section 4.9 and the Acknowledgment [at the end of Section 4.8], to *give beneficial holders a direct claim in respect of payments falling due* (*but not in respect of other rights*)." (Ex. 2 (Skeleton for Issue Concerning the Trustee) ¶ 56(a) (emphasis added).) In other words, Plaintiffs argued the opposite of what they assert here, that the last sentence of Section 4.8 only gave beneficial holders the right to directly file claims for payments due, and did *not* extend other rights to beneficial holders.

30.    The English Trial Court eventually sided with Plaintiffs on the Trustee Priority Dispute. It held that Section 4.9 entitles Plaintiffs to bring their claim in their own right, and that Section 4.8 of the Indenture (or Section 11 of the Global Security) does not "ha[ve] a priority which pre-empts a claim brought under section 4.9." (O'Rourke Ex. 10 (April 5, 2023 Judgment) ¶¶ 296, 302.)

## V.    THE ENGLISH TRIAL COURT ORDER

31.    On June 9, 2023, the English Trial Court issued the Trial Court Order granting Plaintiffs monetary damages for the 2013 Payment Amount (plus pre- and post-judgment interest, costs, and other entitlements) and certain specific performance and declaratory relief against the Republic. Plaintiffs and Mr. O'Rourke appear to suggest that paragraph 15 of the Trial Court Order—which provides that "[f]or so long as each [Plaintiff] retains holdings of the Securities, each [Plaintiff] shall have the individual right to enforce the Judgment (including all Judgment Sums) subject to and on the basis of the agreed terms set out in Schedule A to this Order (which are also applicable generally to any payments of the Judgment Sums)" (Compl. Ex. 1 (June 9, 2023 Order) ¶ 15)—establishes Plaintiffs' right to enforce the Trial Court Order in *this Court*. (*See* Opp. at 10–11; O'Rourke Decl. ¶¶ 24–25.) That is incorrect. The Trial Court Order does not mention enforcement in Other Courts at all.

32.    The Trial Court Order was drawn up by the parties following the April 2023 Judgment, as is customary for English court orders. However, orders prepared in this way must still reflect the judgment.  (Ex. 6 (White Book) at 40.1.1.)[1]  In other words, the Trial Court Order reflects the conclusions reached by Mr. Justice Picken in the April 2023 Judgment.  By participating in the drafting of a post-judgment order, a party to English litigation does not concede that the judgement was correctly decided, only that it reflects the court's decision.

33.    Given this backdrop as to what was litigated at trial (*i.e.*, the Trustee Priority Dispute) and what was not (*i.e.*, the Republic's waiver of sovereign immunity), paragraph 15 of the Trial Court Order—which grants "each [Plaintiff] . . . [an] individual right to enforce the Judgment" provided that they "retain holdings of the Securities" (Compl. Ex. 1 (June 9, 2023 Order) ¶ 15)—was aimed at preventing any further disagreement between the Trustee and Plaintiffs as to their respective priorities in enforcing the Judgment against the Republic.  In light of the English Trial Court's ruling on Section 4.9 of the Indenture, given that the Republic adopted a neutral stance at trial on the Trustee Priority Dispute, the Republic did not object to the terms of paragraph 15 of the Trial Court Order.

34.    Contrary to what seems to be the implication in the O'Rourke Declaration (*see* O'Rourke Decl. ¶ 24), paragraph 15 of the Trial Court Order does not reflect any ruling on the scope of the Republic's waiver of sovereign immunity in relation to actions to enforce a "Related Judgment" in "Other Courts" (*i.e.*, courts outside of England and Argentina), since—as explained above—that issue was not litigated at trial.

---

[1]    The White Book is the primary, authoritative guide to procedure in the High Court and Court of Appeal of England and Wales and contains the Civil Procedure Rules, Practice Directions and authoritative commentary on case law applying those provisions.  An excerpt of the relevant chapter in the White Book is attached as **Exhibit 6**.

35.     Schedule A to the Trial Court Order independently confirms that paragraph 15 of the Trial Court Order does *not* make Plaintiffs identically situated with the Trustee for purposes of enforcement.

    a.     Paragraph 15 of the Trial Court Order states that Plaintiffs' "individual right to enforce the Judgment" is "*subject to* and on the basis of the agreed terms set out in Schedule A to this Order (which are also applicable generally to any payments of the Judgment Sums)." (Compl. Ex. 1 (June 9, 2023 Order) ¶ 15 (emphasis added).)

    b.     As Mr. O'Rourke notes (O'Rourke Decl. ¶ 25), and as Plaintiffs acknowledge, the terms of Schedule A were "agreed . . . between the Trustee and Plaintiffs relating to the enforcement of the Judgment" (Opp. at 10).

    c.     In turn, Schedule A contains an agreement between Plaintiffs and the Trustee that the Trustee's participation may be required for certain enforcement actions. Specifically, Paragraph 3(d) of Schedule A states: "In seeking any enforcement, the Claimants shall act in and use only their own names and shall not and shall have no right to act in the Trustee's name. *If the Claimants consider any step or any action requires the use of the Trustee's name or the Trustee to be a party, they shall obtain the Trustee's express written consent*, which consent the Trustee is not to unreasonably withhold." (Compl. Ex. 1 (June 9, 2023 Order), Sch. A, ¶ 3(d) (emphasis added).)

    d.     Interpreting paragraph 15 of the Trial Court Order as allowing Plaintiffs to bring any and all potential enforcement actions in their own right and their sole name would therefore contradict Schedule A.

## VI.    THE REPUBLIC'S APPEAL

36.    Contrary to Plaintiffs' assertion (Opp. at 2, 11) and what appears to be the implication in the O'Rourke Declaration (O'Rourke Decl. ¶ 29), the fact that the Republic did not challenge the English Trial Court's interpretation of Section 4.9 of the Indenture in the context of the Trustee Priority Dispute when the Republic sought permission to appeal to the English Appellate Court has no bearing on the issue now being litigated between Plaintiffs and the Republic—namely, whether Plaintiffs are Holders for the purpose of the Republic's waiver of sovereign immunity in relation to enforcement actions by beneficial owners in this Court. (*Supra* paragraph 27, 29.)

37.    For the same reason, the fact that the Republic did not challenge the terms of the Trial Court Order concerning "Plaintiffs' powers of enforcement" (O'Rourke Decl. ¶ 29) on appeal is irrelevant because the Trial Court Order does not reflect any ruling on the scope of the Republic's waiver of sovereign immunity for enforcement actions in an Other Court like this Court. (*Supra* paragraphs 33–35.)

## VII.    THE ENGLISH ORDER RECORDING OUTSTANDING JUDGMENT SUMS FOR ENFORCEMENT PURPOSES

38.    As noted in the O'Rourke Declaration, the English Trial Court issued a further Order on July 25, 2025 (the "July 2025 Order"), which records the Judgment Sums remaining outstanding as of June 30, 2025.  (O'Rourke ¶ 40.)

39.    Following negotiations between the parties on the terms of the July 2025 Order, Plaintiffs, via their counsel at Quinn Emanuel Urquhart & Sullivan UK LLP ("QE"), wrote to Mr. Justice Picken on July 24, 2025.  A copy of QE's letter is attached as **Exhibit 7**.  A copy of Plaintiffs' proposed draft order is attached as **Exhibit 8**.

40.     Plaintiffs explained that while the form of the order had been substantively agreed, the parties were at odds over one of the recitals.  (Ex. 7 (QE's July 24, 2025 Ltr.) ¶ 3.)  As proposed by Plaintiffs, the recital would state:

> For so long as each Claimant retains holdings of the Securities, each Claimant shall have the individual right to enforce the Judgment (as defined in the 9 June Order) (including all outstanding Judgment Sums (as defined in the 9 June 2023 Order as modified by paragraph 8(b) of the 21 June 2024 Order))**[, and without the need for the Trustee to participate as a party in any enforcement action initiated by any Claimant,]** subject to and on the basis of the agreed terms set out in Schedule A to the 9 June 2023 Order (which are also applicable generally to any payments of the Judgment Sums).

(Ex. 8 (Plaintiffs' Proposed Draft Order), Eighteenth Recital (square brackets in the original and emphasis added).)

41.     The Republic had opposed the inclusion of the square-bracketed language, which references Plaintiffs' rights to enforce the outstanding Judgment Sums without the need for the Trustee to participate as a party in any enforcement action, on the basis that the language did not appear in the Trial Court Order or the English Appellate Court's June 21, 2024 Order.  (Ex. 7 (QE's July 24, 2025 Ltr.) ¶ 7.)

42.     The next day, Mr. Justice Picken's clerk emailed the parties, explaining that the judge had issued the order, which "has no square bracketed wording."  A copy of that email is attached as **Exhibit 9**.  Mr. Justice Picken thus rejected wording that would mean that the Trustee might not need to participate in enforcement proceedings.

## VIII.  PLAINTIFFS' ENFORCEMENT EFFORTS

43.     Plaintiffs have initiated various enforcement actions in the English courts since July 2025, which I briefly describe below.  As explained in the Republic's motion to dismiss (Mot. at 3–4), the Republic has waived its sovereign immunity (subject to the carve-outs in Section 19(a) of the Global Security) for actions brought by beneficial owners to enforce a

-13-

"Related Judgement" in "Specified Courts," defined as courts of Argentina and England.  (Compl. Ex. 5 (2005 Global Security) §§ 17(a), 19(a) at R-14–R-16.)

44.    On July 29, 2025, Plaintiffs filed third-party debt applications in the English court (the "TPDO Applications") seeking orders requiring eight third-party banks to pay to Plaintiffs certain debts owed by such banks to the Republic to discharge the outstanding Judgment Sums.  Interim orders (the "Interim Orders") in substantially identical terms were issued against these third-party banks on August 6, 2025.  A copy of an example of such an Interim Order is attached as **Exhibit 10**.

45.    On September 5, 2025, Plaintiffs filed an additional application in the English court against Banco Santander (being one of the third-party banks) (the "Santander Application") seeking to compel Banco Santander to provide witness evidence confirming, among other things, the searches it had conducted for any bank accounts held by the Republic.

46.    So far as I am aware, as of the date of this declaration, the TPDO Applications and the Santander Application remain pending before the English High Court.

47.    On December 1, 2025, Plaintiffs filed an application in the English court for an order requiring the Republic to attend court to provide information for the purpose of enforcement of the Judgment.  Following negotiations between the parties and a hearing on February 6, 2026, Mr. Justice Robin Knowles issued an Order requiring the Republic to disclose information to Plaintiffs as to (i) timing and means of payment of the outstanding Judgment Sums; and (ii) certain categories of foreign assets held by the Republic outside Argentina.  A copy of the Order dated February 6, 2026 is attached as **Exhibit 11**.

-15-

48.    So far as I am aware, Plaintiffs have not taken steps to seek recognition and/or enforcement of the Judgment in the courts of Argentina.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on March 27, 2026
London, United Kingdom

_____
Harriet Rose Middleditch