**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

-------------------------------------------------------- x

PALLADIAN PARTNERS, L.P.; HBK     :
MASTER FUND L.P.; HIRSH GROUP LLC;     :
and VIRTUAL EMERALD     :
INTERNATIONAL LIMITED,     :
    :
        Plaintiffs,     :    Civil Action No. 1:25-cv-01954-CKK
    :
     - against -     :
    :
THE REPUBLIC OF ARGENTINA,     :
    :
        Defendant.     :
    :

-------------------------------------------------------- x

**DEFENDANT THE REPUBLIC OF ARGENTINA'S REPLY IN SUPPORT OF ITS**
**MOTION TO DISMISS THE COMPLAINT**

Robert J. Giuffra, Jr. (NY Reg. No. 2309177)
Sergio J. Galvis (NY Reg. No. 1934264)
(*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
Telephone:     (212) 558-4000
Facsimile:     (212) 558-3588
giuffrar@sullcrom.com
galviss@sullcrom.com

Amanda F. Davidoff (D.C. Bar No. 978033)
Thomas C. White (D.C. Bar No. 90010165)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.
Washington, D.C.  20006-5215
Telephone:     (202) 956-7500
Facsimile:     (202) 293-6330
davidoffa@sullcrom.com
whitet@sullcrom.com

*Counsel for the Republic of Argentina*

March 27, 2026

**TABLE OF CONTENTS**

*Page*

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT ...........................................................................................................................3

I.  THE REPUBLIC HAS NOT WAIVED SOVEREIGN IMMUNITY FOR
    ENFORCEMENT BY PLAINTIFFS IN THIS COURT ............................................3

    A.  Section 19(b) Expressly States That the Republic Has Not Waived
        Sovereign Immunity for Plaintiffs' Suit .................................................................3

        1.  Section 19(b) Expressly Limits Who May Bring Enforcement
            Actions in Other Courts .................................................................................4

        2.  Courts Applying the FSIA Strictly Enforce Limitations in Waivers
            as Written ........................................................................................................5

    B.  Plaintiffs Cannot Import a Sentence from Section 11 of the Global
        Security into Section 19(b) .......................................................................................6

    C.  Other Provisions in the Global Security Confirm the Republic's Reading ...........10

    D.  English Law, If Relevant At All, Does Not Alter the Analysis .............................13

II. THE REPUBLIC IS NOT "BARRED" FROM INVOKING ITS
    SOVEREIGN IMMUNITY........................................................................................15

    A.  Neither Judicial Estoppel Nor *Res Judicata* Can Confer Jurisdiction Under
        the FSIA .....................................................................................................................15

    B.  In Any Event, the Scope of the Republic's Waiver of Sovereign Immunity
        Was Never at Issue in Either the English Proceedings or the *Aurelius*
        Litigation....................................................................................................................16

CONCLUSION .....................................................................................................................22

## TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Aldossari on Behalf of Aldossari* v. *Ripp*,
  49 F.4th 236 (3d Cir. 2022) ...................................................................................................8

*Allina Health Servs.* v. *Price*,
  268 F. Supp. 3d 211 (D.D.C. 2017) ......................................................................................17

*Aquamar, S.A.* v. *Del Monte Fresh Produce N.A., Inc.*,
  179 F.3d 1279 (11th Cir. 1999) ............................................................................................13

*Atlantic Tele-Network* v. *Inter-Am. Dev. Bank*,
  251 F. Supp. 2d 126 (D.D.C. 2003) ....................................................................................5, 6

*Aurelius Cap. Master, Ltd.* v. *Republic of Argentina*,
  2025 WL 1949968 (2d Cir. July 16, 2025) ........................................................................8, 19

*Aurelius Cap. Master, Ltd.* v. *Republic of Argentina*,
  728 F. Supp. 3d 274 (S.D.N.Y. 2024) ...................................................................................19

*Bainbridge Fund Ltd.* v. *Republic of Argentina*,
  102 F.4th 464 (D.C. Cir. 2024) ...........................................................................1, 3, 10, 14

*Belhas* v. *Ya'alon*,
  515 F.3d 1279 (D.C. Cir. 2008) ............................................................................................16

*Casa Express Corp. as Tr. of Casa Express Tr.* v. *Bolivarian Republic of Venezuela*,
  492 F. Supp. 3d 222 (S.D.N.Y. 2020) .....................................................................................9

*Commerzbank AG* v. *Wells Fargo Bank, N.A.*,
  2024 WL 4554081 (2d Cir. Oct. 23, 2024) ....................................................................8, 11, 12

*Contrarian Cap. Mgmt., L.L.C.* v. *Bolivarian Republic of Venezuela*,
  2020 WL 5849013 (S.D.N.Y. Oct. 1, 2020) .............................................................................9

*de Sousa* v. *Embassy of Republic of Angola*,
  229 F. Supp. 3d 23 (D.D.C. 2017) ..........................................................................................9

*Drake* v. *F.A.A.*,
  291 F.3d 59 (D.C. Cir. 2002) ................................................................................................21

*Feldbaum* v. *McCrory Corp.*,
  1992 WL 119095 (Del. Ch. June 2, 1992) ...............................................................................7

*Firebird Glob. Master Fund II Ltd. v. Republic of Nauru,
    915 F. Supp. 2d 124 (D.D.C. 2013) ...............................................................2, 5, 13

Flynn v. Dick Corp.,
    481 F.3d 824 (D.C. Cir. 2007) .............................................................................13

GenopsGroup LLC v. Pub. House Invs. LLC,
    67 F. Supp. 3d 338 (D.D.C. 2014) ......................................................................13

*Hegna v. Islamic Revolutionary Guard Corps,
    908 F. Supp. 2d 116 (D.D.C. 2012) ............................................................2, 20, 21

*Hulley Enterprises Ltd. v. Russian Federation,
    149 F.4th 682 (D.C. Cir. 2025) ...........................................................................16

I.A.M. Nat'l Pension Fund, Benefit Plan A v. Industrial Gear Mfg. Co.,
    723 F.2d 944 (D.C. Cir. 1983) ............................................................................20

Jacubovich v. State of Israel,
    816 F. App'x 505 (2d Cir. 2020) ........................................................................16

*Jerez v. Republic of Cuba,
    964 F. Supp. 2d 52 (D.D.C. 2013) ...............................................................17, 20, 21

U.S. ex rel. K&R Ltd. P'ship v. Mass. Hous. Fin. Agency,
    456 F. Supp. 2d 46 (D.D.C. 2006) .........................................................................6

Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.,
    590 U.S. 405 (2020).............................................................................................20

Moses v. Howard Univ. Hosp.,
    606 F.3d 789 (D.C. Cir. 2010).......................................................................17, 19

*Nassif v. Republic of Iraq,
    759 F. Supp. 3d 30 (D.D.C. 2024) ........................................................................2

*Nassif v. Republic of Iraq,
    166 F.4th 1099 (D.C. Cir. 2026) ...........................................................................9

*Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Tr. Co.,
    172 F. Supp. 3d 700 (S.D.N.Y. 2016)...........................................................11, 12

*SACE S.p.A. v. Republic of Paraguay,
    243 F. Supp. 3d 21 (D.D.C. 2017) ......................................................................16

SM Kids, LLC v. Google LLC,
    963 F.3d 206 (2d Cir. 2020).................................................................................8

*SouthWestern Elec. Co-op, Inc.* v. *F.E.R.C.*,
  347 F. 3d 975 (D.C. Cir. 2003) ............................................................................7

*UMB Bank, N.A.* v. *Bristol-Myers Squibb Co.*,
  2024 WL 4355029 (S.D.N.Y. Sept. 30, 2024) ....................................................12

*UMB Bank, N.A.* v. *Bristol-Myers Squibb Co.*,
  2025 WL 3442747 (S.D.N.Y. Dec. 1, 2025) ..................................................11, 12

*\*United Mine Workers of Am. 1974 Pension* v. *Pittston Co.*,
  984 F.2d 469 (D.C. Cir. 1993) ........................................................................2, 18

*United States* v. *All Assets Held at Bank Julius*,
  229 F. Supp. 3d 62 (D.D.C. 2017) .....................................................................17

*\*World Wide Minerals* v. *Republic of Kazakhstan*,
  296 F.3d 1154 (D.C. Cir. 2002) ................................................................5, 6, 13

**Statutes**

28 U.S.C. § 1605(a)(1).......................................................................................1, 10

**Other Authorities**

Black's Law Dictionary (12th ed. 2024).................................................................4, 8

G. Fuller, *The Law & Practice of Int'l Capital Markets* (4th ed. 2024).......................11

**PRELIMINARY STATEMENT**

Plaintiffs concede (Opp. at 13–15) that this Court lacks subject-matter jurisdiction over this enforcement action—arising out of an *English* judgment under an *English-law* contract—unless the Republic has "waived its immunity . . . explicitly" under the Foreign Sovereign Immunities Act ("FSIA").  28 U.S.C. § 1605(a)(1).  The FSIA sets a high bar:  any waiver must be "clear and unambiguous," as Plaintiffs recognize (Opp. at 14), and the waiver is "narrowly construed in favor of the sovereign," *Bainbridge Fund Ltd.* v. *Republic of Argentina*, 102 F.4th 464, 471 (D.C. Cir. 2024).

Plaintiffs cannot meet that high bar.  To the contrary, the Global Security unambiguously states that the Republic has *not* waived sovereign immunity for this action.  Section 19(b), which specifically governs enforcement of an English judgment (a "Related Judgment") in this Court (an "Other Court") (as those terms are defined in Section 17(a) of the Global Security), provides that the Republic's waiver of sovereign immunity extends "solely" to actions brought by "the Trustee or a Holder."  (Compl. Ex. 5 (2005 Global Security) §§ 17(a), 19(b) at R-14–R-16.) Plaintiffs concede (Opp. at 4) they are neither; they are instead beneficial owners of the Securities. That requires dismissal of this action.  The Republic has not waived its sovereign immunity as to Plaintiffs' enforcement action in this Court.  Any enforcement action Plaintiffs wish to bring must proceed (and is indeed proceeding) in the "Specified Courts" of England or Argentina.

Unable to satisfy Section 19(b)'s plain terms, Plaintiffs try to manufacture a waiver by importing a sentence from an entirely different provision—Section 11, the "No-Action Clause." That sentence allows beneficial owners to "pursue a remedy" in certain circumstances "as if" they were Holders.  It does not redefine "Holder" for all purposes; does not mention sovereign immunity; and does not purport to expand the Republic's waiver in Section 19(b).  In the end, Plaintiffs ask the Court to ignore the word "solely" and to extend Section 19(b) beyond its express

language—"the Trustee or a Holder"—to also apply to a beneficial owner. But courts in this Circuit will not expand sovereign immunity waiver provisions beyond their express terms. *See Firebird Glob. Master Fund II Ltd.* v. *Republic of Nauru*, 915 F. Supp. 2d 124, 127–28 (D.D.C. 2013) (courts have an "obligation to narrowly construe explicit waivers in favor of the sovereign" and enforce waivers only as expressly written); *Nassif* v. *Republic of Iraq*, 759 F. Supp. 3d 30, 43 (D.D.C. 2024), *aff'd*, 166 F.4th 1099 (D.C. Cir. 2026) (FSIA "requires the use of *precise* words to express that the sovereign intended to waive its immunity").

Plaintiffs alternatively say that the Republic is "barred" from contesting jurisdiction on the basis of sovereign immunity. (Opp. at 22.) Plaintiffs claim that principles of *res judicata* or judicial estoppel apply because the Republic purportedly "accepted" that Plaintiffs are "Holders" in the English proceedings and described other plaintiffs as "Holders" in the Southern District of New York case ("*Aurelius*"). (Opp. at 22–27.) That argument fails for two independent reasons. *First*, the FSIA does not recognize either *res judicata* or judicial estoppel as a basis for obtaining jurisdiction over a sovereign. *Second*, even if those doctrines could apply, they are not satisfied here. The issue presented—the scope of the Republic's waiver of sovereign immunity in an Other Court—was not raised, litigated, or decided in either the English proceedings or the *Aurelius* litigation, which involved different securities denominated in U.S. dollars, governed by New York law, and providing for jurisdiction in New York. Because the Republic has "never taken a contrary position on" this issue of sovereign immunity, much less prevailed on such a position, judicial estoppel does not apply. *United Mine Workers of Am. 1974 Pension* v. *Pittston Co.*, 984 F.2d 469, 475 (D.C. Cir. 1993). And because this issue was not "distinctly put in issue and directly determined" in the English proceedings, *res judicata* does not apply either. *Hegna* v.

*Islamic Revolutionary Guard Corps*, 908 F. Supp. 2d 116, 126 (D.D.C. 2012) (quoting *Montana* v. *United States*, 440 U.S. 147, 153 (1979)).

## ARGUMENT

**I.    THE REPUBLIC HAS NOT WAIVED SOVEREIGN IMMUNITY FOR ENFORCEMENT BY PLAINTIFFS IN THIS COURT.**

Section 19 of the Global Security contains the Republic's "Waiver of Immunity." (Compl. Ex. 5 (2005 Global Security) § 19 at R-16.)  Section 19(b) governs the enforcement of judgments in Other Courts, like this one, and its plain language makes clear that it is a "limited and specific waiver" that applies "solely for the purpose of enabling the Trustee or a Holder of Securities of this Series to enforce or execute a Related Judgment."  (*Id.* § 19(b) at R-16.)  (Arg Br. at 7–11.)  Under settled law, this waiver is construed narrowly—a point that Plaintiffs ignore entirely.  (*Infra* Section I.A.)  Plaintiffs' attempt to import unrelated language from the No-Action Clause (Section 11) to expand the scope of Section 19(b)'s limited waiver is fatally flawed under binding authority and the Global Security's plain language (*infra* Section I.B), and is inconsistent with the structure of the Global Security as a whole (*infra* Section I.C).  English law, if it has any relevance here, simply confirms that Section 19(b)'s waiver does not apply to this enforcement action.  (*Infra* Section I.D.)

**A.    Section 19(b) Expressly States That the Republic Has Not Waived Sovereign Immunity for Plaintiffs' Suit.**

Plaintiffs recognize that "the ultimate determination as to the application of the FSIA waiver is a question of federal law." (Opp. at 16.)  Thus, to prevail here, the Republic's waiver of sovereign immunity must be "clear and unambiguous," as Plaintiffs acknowledge.  (Opp. at 14.)  In this Circuit (as elsewhere), waivers of sovereign immunity are "narrowly construed in favor of the sovereign" and may not be "enlarged beyond what the language requires." *Bainbridge*,

102 F.4th at 471.  Plaintiffs cannot overcome this high bar.  The language of Section 19(b) of the Global Security is unambiguous—and unambiguously forecloses jurisdiction in this action.

### 1. Section 19(b) Expressly Limits Who May Bring Enforcement Actions in Other Courts.

Plaintiffs do not dispute that (i) the English judgment is a "Related Judgment"; and (ii) this Court is an "Other Court" within the meaning of the Global Security.  (Compl. ¶ 18.)  That requires dismissal of this action.  Plaintiffs seek to enforce a Related Judgment in an Other Court, and Section 19(b) directly bars beneficial owners like Plaintiffs from doing so:

> This waiver of sovereign immunity constitutes only ***a limited and specified waiver*** for the purpose of the Securities of this Series and the Indenture and under no circumstances shall it be interpreted as a general waiver of the Republic or a waiver with respect to proceedings unrelated to the Securities of this Series or the Indenture.  Insofar as this waiver relates to the jurisdiction in which an Other Court is located, the Republic extends it ***solely for the purpose of enabling the Trustee or a Holder of Securities of this Series to enforce*** or execute a Related Judgment.

(Compl. Ex. 5 (2005 Global Security) § 19(b) at R-16 (emphasis added).)  This provision controls.  Section 19(b) expressly limits the waiver of sovereign immunity in Other Courts to actions brought by "the Trustee or a Holder."  The word "solely" makes the limitation explicit:  only those two categories of parties may invoke the waiver to enforce a Related Judgment in an Other Court.  Plaintiffs fall into neither category.

In their Opposition, Plaintiffs now concede as much.  Abandoning the allegation in their Complaint that they are "valid Holders" (¶ 20), Plaintiffs admit that they are "beneficial owners"—*not* Holders—of the Securities.  (Opp. at 2, 4; Compl. ¶ 27.)  A beneficial owner holds only equitable title; the securities are not registered in their name.  Black's Law Dictionary (12th ed. 2024).  The Global Security defines a "Holder" as the "person in whose name a Security shall

be registered"—and that is The Bank of New York Depositary (Nominees) Limited, not Plaintiffs. (Compl. Ex. 5 (2005 Global Security) § 1(c) at R-1; *id.* at 1.)  Because Plaintiffs are neither the Trustee nor a Holder, they cannot invoke the waiver and this Court lacks jurisdiction under the FSIA.

**2.    Courts Applying the FSIA Strictly Enforce Limitations in Waivers as Written.**

Courts applying the FSIA consistently enforce the limits of a sovereign's waiver as written and refuse to extend waivers beyond their express terms.

- In *Firebird*, the waiver designated the Tokyo District Court and Nauruan courts as the exclusive fora for "any legal action relating to" the contract at issue, and waived immunity only "in any such action."  915 F. Supp. 2d 124, 127 (D.D.C. 2013).  The court held that the waiver could not be extended to "sustain an action in the United States," emphasizing the "obligation to narrowly construe explicit waivers in favor of the sovereign."  *Id*. at 127–28.

- In *World Wide Minerals* v. *Republic of Kazakhstan*, the waivers were contained in only two of four related agreements entered into by Kazakhstan relating to the management of a uranium facility.  296 F.3d 1154, 1157–58 (D.C. Cir. 2002).  The Court of Appeals for the D.C. Circuit refused to "enlarge" those waivers to cover claims under the other two agreements, holding that—even though all four agreements concerned the same matter and were executed close in time—such an expansion was not "clear and unambiguous" from the language of the waivers.  *Id.* at 1162–63.

- And, in *Atlantic Tele-Network* v. *Inter-Am. Dev. Bank*, Guyana agreed to "waive any defense of sovereign immunity and consents to suit, if necessary, to resolve

-5-

disputes concerning the interpretation of this Agreement." 251 F. Supp. 2d 126, 133 (D.D.C. 2003). Despite this broad language, the court held that the waiver did not extend to U.S. courts because the provision "gives no intimation that [Guyana] was ever thereby contemplating suit in the United States." *Id*.

This law requires dismissal here. Section 19(b) expressly limits the waiver in "Other Courts" "solely" to actions brought by "the Trustee or a Holder." (Compl. Ex. 5 (2005 Global Security) § 19(b) at R-16.) Plaintiffs' attempt to avoid dismissal succeeds only if Section 19(b) is rewritten to apply to beneficial owners—that is, only if the Court expands the waiver beyond its actual terms to include not only "the Trustee or a Holder" but also *a beneficial owner*. But courts in this Circuit will not "enlarge[]" the Republic's waiver "beyond what the language requires."[1] *World Wide Minerals*, 296 F.3d at 1162. If silence cannot establish a waiver (as the court held in *Atlantic Tele-Network*), affirmative language limiting the waiver "solely" to "the Trustee or a Holder" cannot be re-written to extend to beneficial owners like Plaintiffs.

**B.    Plaintiffs Cannot Import a Sentence from Section 11 of the Global Security into Section 19(b).**

In the face of the plain language of Section 19(b) and a veritable wall of authority instructing courts to construe waivers narrowly, Plaintiffs propose a misreading of the Global

---

[1]    Plaintiffs' English law expert (Lord Neuberger) offers a novel argument Plaintiffs do not advance in their Opposition: that Section 19(b) merely "confirm[s]" that the Republic's waiver in Section 19(a) applies to the enforcement of Related Judgments. (*See* Neuberger Decl. ¶¶ 35–36.) That interpretation strikes out the key language of Section 19(b) identifying the parties to whom it applies: "~~*the Trustee or a Holder of Securities of this Series*~~." Courts in this Circuit do not construe contracts in such a way as to render operative language meaningless. *See U.S. ex rel. K&R Ltd. P'ship* v. *Mass. Hous. Fin. Agency*, 456 F. Supp. 2d 46, 56 (D.D.C. 2006) (courts will "construe[] contracts in a manner that gives effect to the words used by the parties"). Neither Plaintiffs nor Lord Neuberger offer any explanation as to why what is clearly stated in Section 19(a) requires a confirmation right after the statement, or why different words were used for a supposed confirmation.

Security that rests on a single sentence in a provision having nothing to do with sovereign immunity.  Plaintiffs rely on the so-called "Acknowledgement" sentence in Section 11 of the Global Security (Opp. at 1–2, 15–19), which states that:

> The Republic expressly acknowledges, with respect to the right of any Holder to pursue a remedy under the Indenture, the GDP-Linked Securities Authorization or the Securities, the right of any beneficial owner of Securities to pursue such remedy with respect to the portion of this Global Security that represents such beneficial owner's interest in this Security as if Certificated Securities had been issued to such beneficial owner.

(Compl. Ex. 5 (2005 Global Security) § 11 at R-13.)  Under Plaintiffs' theory, this sentence reflects an unqualified commitment by the Republic to treat beneficial owners as "Holders" for all purposes under the Global Security—including in Section 19(b), which specifically governs the Republic's waiver of sovereign immunity for enforcement of judgments in this Court.  That is wrong.

Section 11 of the Global Security (identical to Section 4.8 of the Indenture in relevant terms) is a "No-Action" Clause.  It governs who may bring claims under the Securities, not who may invoke the Republic's waiver of sovereign immunity or where a judgment may be enforced—matters specifically addressed in Section 19.  *See SouthWestern Elec. Co-op, Inc.* v. *F.E.R.C.*, 347 F. 3d 975, 982 (D.C. Cir. 2003) ("specific provisions control").  The "primary purpose" of the No-Action Clause is to *limit* the ability of individuals to sue the Republic and "centralize enforcement powers" in the trustee.  *Feldbaum* v. *McCrory Corp.*, 1992 WL 119095, at *6 n.11 (Del. Ch. June 2, 1992).

Section 11 thus channels all actions through the Trustee subject to two limited exceptions.  The first exception (which cross-references Section 4.9 of the Indenture) permits individual claims for "payment of principal of and interest on" the Securities.  (Compl. Ex. 5 (2005

Global Security) § 11 at R-13; Compl. Ex. 3 (2005 Indenture) § 4.9 at 25.)  The second exception permits claimants to "institute any suit, action or proceeding in equity or at law" or "for any other remedy" under the Securities where the Trustee has declined to act after the claimants satisfied the five preconditions to bringing suit (Compl. Ex. 5 (2005 Global Security) § 11 at R-13; Compl. Ex. 3 (2005 Indenture) § 4.8 at 24–25).  *See Aurelius Cap. Master, Ltd.* v. *Republic of Argentina*, 2025 WL 1949968, at *1–2 (2d Cir. July 16, 2025) (discussing the two exceptions to the general prohibition on bringing individual actions under the Global Security).

Although both exceptions refer to "Holders," not beneficial owners, the final sentence of Section 11 extends the right to pursue a remedy under the contract to beneficial owners for purposes of the two exceptions described above.  In other words, as Plaintiffs themselves put it, the Republic agreed to "regard" beneficial owners as "Holders," but solely with respect to "[the] right of any Holder to pursue a remedy under the Indenture . . . or the Securities" as permitted by Section 11.  (Opp. at 1, 15.)  Plaintiffs treat that "Acknowledgement" sentence as though it expands the Republic's waiver of sovereign immunity.  It does not.

The phrase "pursue a remedy" in the Global Security concerns contractual standing—the right to bring a claim for "legal or equitable relief" under the contract—not sovereign immunity or subject-matter jurisdiction.  Black's Law Dictionary (12th ed. 2024).  A "party's right to relief for breach of contract" is a "question of . . . contractual standing." *SM Kids, LLC* v. *Google LLC*, 963 F.3d 206, 211 (2d Cir. 2020); *see also Commerzbank AG* v. *Wells Fargo Bank, N.A.*, 2024 WL 4554081, at *4 (2d Cir. Oct. 23, 2024) (provision regarding "legal or equitable right, remedy or claim" concerned "contractual standing").  Contractual standing "does not implicate subject-matter jurisdiction." *SM Kids*, 963 F.3d at 211–12 & n.3; *Aldossari on Behalf*

*of Aldossari* v. *Ripp*, 49 F.4th 236, 247 (3d Cir. 2022) ("contractual standing . . . do[es] not go to the court's subject matter jurisdiction" under FSIA).[2]

The Acknowledgment sentence thus permits beneficial owners to pursue remedies "as if" they were Holders—nothing more. It does not redefine "Holder" for all purposes under the contract, and it says nothing about sovereign immunity, jurisdiction, or enforcement in foreign courts. Those matters are separately governed by Sections 17 and 19. And this reading gives the Acknowledgment sentence real work to do: it is what allowed Plaintiffs to bring claims directly against the Republic for payment on the Securities in England after Plaintiffs had complied with the prerequisites to bringing suit. As Plaintiffs conceded in the English proceedings: "[a] decision has been taken, in the form of Section 4.9 and the Acknowledgment, to give beneficial holders a direct claim in respect of payments falling due (***but not in respect of other rights***)." (Middleditch Decl. ¶ 29 (emphasis added).)

In any event, Plaintiffs' misreading of the Global Security still fails under the FSIA. A waiver of sovereign immunity must be "clear and unambiguous," and courts will not infer such a waiver from provisions that do not expressly address immunity. *Nassif*, 166 F.4th at 1104 ("Where courts have found an explicit waiver, the sovereign's statements have addressed immunity in terms—using words such as 'waive' and 'immunity'—that unmistakably convey consent to jurisdiction.") Section 11 does not mention immunity at all. It therefore cannot supply the clear statement effecting a waiver of sovereign immunity required to establish jurisdiction. *See de Sousa* v. *Embassy of Republic of Angola*, 229 F. Supp. 3d 23, 31 (D.D.C. 2017) (a provision

---

[2]    Other courts have also distinguished between questions of contractual standing and waiver of sovereign immunity under the FSIA. *See Casa Express Corp. as Tr. of Casa Express Tr.* v. *Bolivarian Republic of Venezuela*, 492 F. Supp. 3d 222, 229–30 (S.D.N.Y. 2020); *Contrarian Cap. Mgmt., L.L.C.* v. *Bolivarian Republic of Venezuela*, 2020 WL 5849013, at *4 (S.D.N.Y. Oct. 1, 2020).

"concern[ing] choice of law and agreements to arbitrate" in which "the word[] 'immunity' . . . d[id] not appear" did "not constitute an explicit waiver of immunity"). Much less can it cross-out the express limiting language in the Republic's waiver.

The D.C. Circuit's decision in *Bainbridge* is on point. There, even a consent clause—under which Argentina agreed "generally for the purposes of the [FSIA] to the giving of any relief"—was not sufficiently clear to waive immunity under 28 U.S.C. § 1605(a)(1). 102 F.4th at 467, 470–71. If that provision (which at least referenced the FSIA) was inadequate, the Acknowledgment sentence, which does not mention immunity at all, cannot support a waiver.

**C.      Other Provisions in the Global Security Confirm the Republic's Reading.**

Plaintiffs' interpretation is also wrong because it collapses distinctions the Global Security repeatedly and deliberately maintains.

1.      The contract defines a "Holder" as "[a]ny person in whose name a Security shall be registered," and the Securities are registered in the name of The Bank of New York Depositary (Nominees) Limited. (Compl. Ex. 5 (2005 Global Security) § 1(c) at R-1; *id.* at 1.) Beneficial owners, by contrast, hold only equitable interests. (*Supra* p. 4.) The Indenture[3] makes this point explicit: "owners of beneficial interests in a Global Security . . . *will not be considered the* owners or *Holders* thereof." (Compl. Ex. 3 (2005 Indenture) § 2.5(c) at 12 (emphasis added).) Plaintiffs nonetheless ask the Court to ignore this plain language by treating beneficial owners as Holders for all purposes. The governing documents do not support this maneuver.

The distinction between Holders and beneficial owners is intentional. Where the parties meant "beneficial owners," they said so expressly, as in Section 2(a), which directs

---

[3]      The Indenture governs all securities issued as part of the Republic's debt exchanges in 2005 and 2010, including the Securities. The terms of the Indenture are incorporated in the Global Security by reference. (Compl. Ex. 5 (2005 Global Security) at 2; *see also* Arg Br. at 2 & 8 n.4.)

payments to the registered Holder and then the "*pro rata* distribution among the beneficial owners." (Compl. Ex. 5 (2005 Global Security) § 2(a) at R-5.)  When the parties meant "Holders," they used that term, as in Section 2(e), which addresses the Trustee's obligations to hold monies "in trust exclusively for itself and the Holders." (*Id*. § 2(e) at R-6.)  These provisions do not, as Plaintiffs claim, simply "treat[] beneficial owners of the Securities as 'Holders.'" (Opp. at 19.)

Nor do the Global Security's references to "Holders" in the plural amount to "evidence of the Republic's intention to treat the Plaintiffs as Holder." (*Id*.)  It is standard for securities agreements to define "Holder" in a way that refers to a single depositary (or its nominee), and then use the plural term "Holders" elsewhere in the agreements,[4] as the Global Security does here.  Moreover, the Indenture contemplates that the securities could be converted into multiple definitive securities, giving rise to multiple "Holders."[5] (Compl. Ex. 3 (2005 Indenture) §§ 2.5(e), 2.5(g) at 13.)

---

[4]    *See*, for example, the agreements at issue in *Commerzbank*, *Phoenix Light*, and *UMB Bank*. *Compare Commerzbank*, 2024 WL 4554081, at *4 n.6 ("Certificateholder" defined as "[t]he Person in whose name a Certificate is registered in the Certificate Register," and "the relevant certificates 'shall be registered in the name of the Depository or its nominee,' namely, the DTC or Cede & Co.") *with Commerzbank*, 1:15-cv-10033, ECF No. 1-3 at 40 (requiring notice to "Holders of Certificates entitled to at least 25% of the Voting Rights" for an event of default); *compare Phoenix Light*, 172 F. Supp. 3d at 711 ("Holder" defined as "[t]he [p]erson in whose name a Certificate is registered in the Certificate Register," and "the Depository Trust Company, also known as Cede & Co., is the registered holder") *with Phoenix Light*, 14-cv-10103, ECF No. 28-58 at 145 (requiring the trustee to withdraw its compensation "prior to making any distributions to Certificateholders"); *compare UMB Bank*, 2025 WL 3442747, at *3–4 ("Holder" defined as "a Person in whose name a Security is registered in the Security Register," and "DTC, which, through its nominee Cede & Co., was the registered holder of over 99% of" of the securities) *with id.* at *3 ("set[ting] a record date for purposes of determining the identity of Holders entitled to vote").

[5]    Provisions allowing for a security issued with one Holder to later have multiple Holders are standard.  *See* G. Fuller, *The Law & Practice of Int'l Capital Markets* (4th ed. 2024), at [1.126] ("[A] global security normally specifies certain situations in which the issuer is to print definitive securities and to deliver them to the accountholders in exchange for the global security (and, in the case of a registered issue, to enter the accountholders' names in the register in place of the common nominee).").

Courts interpreting similar contracts have consistently enforced the distinction between registered Holder(s) and beneficial owners like Plaintiffs. *See Commerzbank*, 2024 WL 4554081, at *4 (enforcing provision that "only Certificateholders may bring claims under the agreements—beneficial owners may not"); *Phoenix Light SF Ltd.* v. *Deutsche Bank Nat'l Tr. Co.*, 172 F. Supp. 3d 700, 711 (S.D.N.Y. 2016) (enforcing "the plain language of the [contract] that treats registered holders differently from beneficial owners"); *UMB Bank, N.A.* v. *Bristol-Myers Squibb Co.*, 2024 WL 4355029, at *6 (S.D.N.Y. Sept. 30, 2024) (refusing to "disregard the plain language of the [agreement]" to allow beneficial holders to make an appointment reserved for "Majority Holders"); *UMB Bank, N.A.* v. *Bristol-Myers Squibb Co.*, 2025 WL 3442747, at *6 (S.D.N.Y. Dec. 1, 2025) (refusing to apply a deadline governing "Holders" to beneficial holders because "beneficial holders were not 'Holders' within the meaning of the [agreement]"). (Arg Br. at 10.) Plaintiffs attempt to distinguish *Commerzbank* and *Phoenix Light* on the ground that they "involved agreements that explicitly limit a beneficial owner's enforcement right." (Opp. at 21.) But the same is true here: Section 19(b) expressly limits enforcement actions in Other Courts to "the Trustee or a Holder."

2.     Plaintiffs' misreading also cannot be squared with the Global Security's enforcement structure. Section 17(a) distinguishes between "Specified Courts" (those in England and Argentina) and all "Other Courts" (those where the Republic "is or may be subject" to jurisdiction). (Compl. Ex. 5 (2005 Global Security) § 17(a) at R-14–R-15.) Section 19 provides that enforcement actions can only be brought in Other Courts pursuant to the Republic's waiver of immunity contained therein. (*Id.* §§ 19(a)–(b) at R-16.) Sections 19(a) and 19(b), in turn, rely on the distinction between Specified Courts and Other Courts in discussing the Republic's "Waiver of Immunity." (*Id.*) Section 19(a) contains no limitation on who may bring enforcement actions

in Specified Courts, but Section 19(b) makes clear that it is a "limited and specific waiver" that "extends . . . solely for the purpose of enabling the Trustee or a Holder . . . to enforce or execute a Related Judgment" in an Other Court. (*Id.*) (Arg Br. at 3–4.)

Under Plaintiffs' misreading of the Global Security, there would be no need to distinguish between Specified Courts and Other Courts for purposes of enforcement actions, and the last sentences of Sections 17(a) and 19(b) would be meaningless. This Court must "eschew" such an interpretation. *GenopsGroup LLC* v. *Pub. House Invs. LLC*, 67 F. Supp. 3d 338, 343 (D.D.C. 2014); *Flynn* v. *Dick Corp.*, 481 F.3d 824, 831 (D.C. Cir. 2007) ("absent evidence of such intent, parties 'ought not be presumed to have included in their agreement a meaningless provision'").

### D.    English Law, If Relevant At All, Does Not Alter the Analysis.

Federal law governs whether there is an explicit waiver under the FSIA—even when the underlying contract is governed by foreign law. *See World Wide Minerals*, 296 F.3d at 1162–63 (applying federal law to construe waiver governed by Kazakhstan law); *Firebird*, 915 F. Supp. 2d at 127–28 (applying federal law to construe waiver governed by Japanese law); *Aquamar, S.A.* v. *Del Monte Fresh Produce N.A., Inc.*, 179 F.3d 1279, 1293–94 (11th Cir. 1999) ("The effectiveness of an express . . . waiver under section 1605(a)(1) is . . . governed by a uniform federal rule."). Plaintiffs concede as much. (Opp. at 16.) Yet they invoke English law without citing a single case in which any court has looked to foreign law to determine whether a sovereign explicitly waived immunity under the FSIA.[6]

---

[6]    Plaintiffs' three out-of-circuit cases are inapposite: two are district court decisions outside the FSIA context, and the third is a Second Circuit decision that applied "*federal* principles of contract interpretation," while merely remarking in dicta that there was no indication that foreign law "would alter the essential analysis." (Opp. at 16 (citing *Capital Ventures Intern.* v. *Republic of Argentina*, 552 F.3d 289, 294 n.4 (2d Cir. 2009)).)

To the extent English law has any relevance, it confirms the Republic's position. As Lord Goldsmith KC[7] explains in his declaration, English law is clear that "where the language used is unambiguous[,] the Court must apply it." (Goldsmith Decl. ¶ 29.) That principle—endorsed by Plaintiffs' own expert (Lord Neuberger) in a decision on contractual interpretation—compels the conclusion that "the language used by the parties in Paragraph 19(b) is the start, and, here, the end of the interpretative process." (*Id.* ¶ 81.)

Applying that principle, Lord Goldsmith explains that Section 19(b)'s waiver is "closely circumscribed." (*Id.* ¶ 37.) The word "solely" limits both who may invoke the waiver ("the Trustee or a Holder") and what may be enforced (a "Related Judgment"). (*Id.* ¶ 49.) Lord Neuberger's contrary reading—that Section 19(b) merely "confirm[s]" the waiver applies to Related Judgments—ignores the phrase "the Trustee or a Holder," thus reading critical limiting language out of the contract. (*Id.* ¶ 63.) Lord Goldsmith also rejects the suggestion that Section 11's Acknowledgment sentence overrides Section 19. (*Id.* ¶ 46.) As explained above (*supra* Section I.B), the Acknowledgment confers contractual standing on beneficial owners; it does not expand the Republic's waiver of immunity.

Plaintiffs' "commercial common sense" argument fares no better.[8] Under English law, commercial considerations do not override clear contractual text. (*Id.* ¶¶ 29–35.) The Republic's interpretation is commercially sensible in any event: beneficial owners may enforce in Specified Courts (as Plaintiffs did in England), while enforcement in Other Courts is channeled

---

[7]     Lord Goldsmith served as the Attorney General of the United Kingdom from 2001 to 2007 and as Chairman of the Bar of England and Wales in 1995. (Goldsmith Decl. ¶ 8.)

[8]     Under federal law, analysis of explicit waivers under the FSIA centers entirely on whether the contractual language "clearly and unambiguously" indicates a sovereign's intent to waive its immunity, without consideration of the commercial context. *Bainbridge*, 102 F.4th at 471.

through the Trustee or Holder to prevent duplicative, uncoordinated proceedings across multiple jurisdictions. (*Id*. ¶¶ 66(a)–(b).)  Therefore, contrary to Plaintiffs' assertion (Opp. at 21), beneficial owners are not "deprive[d] . . . of any real remedy" to enforce their judgment.[9]

In short, English law—if at all relevant—yields the same result as federal law:  the Republic has not waived sovereign immunity for Plaintiffs' enforcement action in this Court.

## II.    THE REPUBLIC IS NOT "BARRED" FROM INVOKING ITS SOVEREIGN IMMUNITY.

Plaintiffs assert in the alternative that the Republic is "barred" from invoking its sovereign immunity based on positions they claim the Republic took or could have taken in the English proceedings and the *Aurelius* litigation in the Southern District of New York.  (Opp. at 20, 22–27.)  This argument fails for two independent reasons.  *First*, preclusion doctrines cannot confer jurisdiction under the FSIA.  (*Infra* Section II.A.)  *Second*, the issue presented here—whether beneficial owners may invoke the Republic's waiver of sovereign immunity to enforce a Related Judgment in an Other Court—was never raised, litigated, or decided in either proceeding. As a result, judicial estoppel and *res judicata* do not apply.  (*Infra* Section II.B.)

### A.    Neither Judicial Estoppel Nor *Res Judicata* Can Confer Jurisdiction Under the FSIA.

Plaintiffs claim that the Republic's litigation positions in other cases—its recognition that beneficial owners are treated as Holders for purposes of contractual standing under Sections 4.8 and 4.9 of the Indenture, or its argument that Holders are bound by certain

---

[9]    The Trustee states that it "supports recognition of the Judgment in the United States." (Webley Decl. ¶ 8.)  Accordingly, beneficial owners, if they meet the standards, may instruct the Trustee to pursue enforcement in this Court on their behalf and may receive their ratable shares of any proceeds recovered.  (Compl. Ex. 3 (2005 Indenture) § 4.5 at 23–24.)  Indeed, the Republic has pre-funded the Trustee for its enforcement of the English judgment.  (O'Rourke Decl. ¶ 39 ("EUR 23,500,000 would be retained by the Trustee to pay the Trustee's and Plaintiffs' anticipated cost of enforcement.").)

calculations—somehow "bar" the Republic from enforcing the express limitation of Section 19(b)'s waiver to "the Trustee or a Holder." (Opp. at 22–27.)  These preclusion arguments suffer from a threshold defect:  neither judicial estoppel nor *res judicata* is a basis for obtaining jurisdiction over a foreign sovereign under the FSIA.

"The Supreme Court has consistently held that the FSIA's enumerated exceptions provide the only path to jurisdiction over foreign states in U.S. courts," and courts cannot "create an exception to the FSIA where Congress has created none."  *Belhas* v. *Ya'alon*, 515 F.3d 1279, 1283 & 1287 (D.C. Cir. 2008).  Estoppel arguments therefore "fail[] for the simple reason" that estoppel is not "a cognizable exception to the FSIA."  *Jacubovich* v. *State of Israel*, 816 F. App'x 505, 509 (2d Cir. 2020).  Nor have Plaintiffs cited any authority for applying *res judicata* to obtain jurisdiction over a foreign sovereign.  *See Hulley Enterprises Ltd.* v. *Russian Federation*, 149 F.4th 682, 691 (D.C. Cir. 2025) ("We are aware of no case . . . in which a court has given preclusive effect to a foreign judgment in order to exercise jurisdiction over a foreign sovereign under the FSIA.").  To the contrary, "[f]ederal courts may not . . . outsource the obligation to determine jurisdictional facts that go to the waiver of sovereign immunity under the FSIA."  *Id.* at 688.  Rather, this Court must make its own "independent factual determinations in order to ascertain its authority under the FSIA."  *SACE S.p.A.* v. *Republic of Paraguay*, 243 F. Supp. 3d 21, 43 (D.D.C. 2017).  This Court should not break new ground by creating estoppel- or preclusion-based exceptions to foreign sovereign immunity not present in the FSIA, or by deferring to supposed jurisdictional determinations in a non-U.S. judgment.

**B.    In Any Event, the Scope of the Republic's Waiver of Sovereign Immunity Was Never at Issue in Either the English Proceedings or the *Aurelius* Litigation.**

Plaintiffs' preclusion arguments are also fundamentally flawed because the scope of the Republic's waiver of sovereign immunity in an Other Court was not—and could not have

been—previously litigated in England or New York. For this reason, Plaintiffs cannot satisfy the requirements for judicial estoppel or *res judicata*. *United States* v. *All Assets Held at Bank Julius*, 229 F. Supp. 3d 62, 72 (D.D.C. 2017) (refusing to apply judicial estoppel because government "had previously not raised [the] issue" in the prior proceeding); *Jerez* v. *Republic of Cuba*, 964 F. Supp. 2d 52, 60 (D.D.C. 2013), *aff'd*, 775 F.3d 419 (D.C. Cir. 2014) (refusing to apply *res judicata* because original court's jurisdictional determination "reflects no consideration of sovereign immunity under the FSIA").

1.      As Plaintiffs acknowledge (Opp. at 23), judicial estoppel requires that (1) "a party's later position [is] clearly inconsistent with its earlier position"; (2) "the party succeeded in persuading a court to accept that party's earlier position"; and (3) "the party seeking to assert an inconsistent position [will] derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Moses* v. *Howard Univ. Hosp.*, 606 F.3d 789, 798 (D.C. Cir. 2010). Not one of these requirements is met.

*First*, the Republic has not previously taken a position on whether beneficial owners may invoke its waiver of sovereign immunity in Other Courts, much less a position inconsistent with the one it asserts now. (Middleditch Decl. ¶¶ 9–10.) "[S]ilence is not sufficient to establish a 'clearly inconsistent' position." *Allina Health Servs.* v. *Price*, 268 F. Supp. 3d 211, 226 (D.D.C. 2017).

*Second*, the English court never considered, much less adopted a position on, the scope of the Republic's waiver of sovereign immunity in Other Courts. Indeed, there is not a single reference to Section 19 of the Global Security in any of the parties' pleadings or submissions. (Middleditch Decl. ¶ 9.) Nor did the English court ever consider whether Plaintiffs may be treated as if they were Holders for all purposes under the governing contracts. (*Id.* ¶ 21.)

-17-

*Third*, there is no unfairness in allowing the Republic to enforce the limitations of its waiver in Section 19(b).  To the contrary, it would be unconscionable to prevent the Republic from enforcing these limitations in the first case where they have arisen.  Because the prior proceedings involved "wholly distinct issues," judicial estoppel does not apply.  *United Mine Workers*, 984 F.2d at 478.

Plaintiffs cannot manufacture an inconsistency by claiming that the Republic "accepted" Plaintiffs as Holders in the English proceedings under Sections 4.8 and 4.9 of the Indenture.  (Opp. at 20, 23–24.)  The dispute under English law as to the operation of Sections 4.8 and 4.9—which concerned whether Section 4.8 preempts Plaintiffs' claims in their own right under Section 4.9—was litigated entirely between Plaintiffs and the Trustee; the Republic took no position on it at trial.  (Middleditch Decl. ¶¶ 17, 28.)  The Republic did not dispute Plaintiffs' contractual standing to pursue claims under those sections of the Indenture in the English proceedings because, as Plaintiffs themselves argued, the Acknowledgment sentence treats beneficial owners as Holders for purposes of bringing claims under those sections, and Plaintiffs had satisfied the five preconditions to bringing suit.  (*Id.* ¶¶ 19–20; *supra* Section I.B.)  But the Republic's decision not to take a position on the dispute between Plaintiffs and the Trustee over the meaning of Sections 4.8 and 4.9 does not mean that the Republic "accepted" that Plaintiffs were "Holders" for all purposes, let alone for enforcing judgments in an "Other Court."  Indeed, Plaintiffs did not make that argument, nor did the English court have any occasion to address it.

Plaintiffs also say that the Republic "affirmatively argu[ed] that Plaintiffs should be bound by the calculations conducted by its Ministry of Economy, reasoning that 'Holders' are bound by those calculations."  (Opp. at 23.)  But the "binding effect" provisions in dispute concerned whether the Ministry of Economy's calculations were binding on Plaintiffs for purposes

of calculating whether payment amounts were due under the Securities—not whether beneficial owners should be treated as Holders for all purposes or for purposes of sovereign immunity in particular. (Middleditch Decl. ¶¶ 23–24.) In any event, the English court did not rule on this argument and therefore it is not a position that the Republic "succeeded in persuading [the] court to accept." *Moses*, 606 F.3d at 798.

Finally, Plaintiffs argue that the *Aurelius* litigation "reinforc[es] the application of judicial estoppel." (Opp. at 24.) Not so. The *Aurelius* litigation likewise did not address the Republic's waiver of sovereign immunity. That case—which involved U.S. dollar-denominated securities, governed by New York law, and subject to jurisdiction in New York—turned on whether the plaintiffs had contractual standing to sue for a contingent payment given that they did not satisfy the preconditions for suit under Section 4.8's no-action clause. *Aurelius Cap. Master, Ltd.* v. *Republic of Argentina*, 728 F. Supp. 3d 274, 284–89 (S.D.N.Y. 2024), *aff'd*, 2025 WL 1949968 (2d Cir. July 16, 2025). The Second Circuit held that the No-Action Clause barred the suit because the claimed payments did not constitute "principal" or "interest." 2025 WL 1949968, at *2–4. The case has nothing to do with an enforcement action in an Other Court.

Plaintiffs seize on the district court's observation that Section 4.8 applies to both Holders and beneficial owners. (Opp. at 22.) But, once again, that observation concerned who may bring a claim under the dollar-denominated securities. It says nothing about whether the plaintiffs are Holders for all purposes under those securities, let alone who may invoke the Republic's waiver of sovereign immunity in an Other Court (like this one) or where a judgment may be enforced. The distinction between contractual standing and FSIA jurisdiction, as explained above (*supra* Section I.B), is dispositive.

There is simply no support for the notion that the Republic has ever advanced the position that Plaintiffs are "Holders" for all purposes under the Global Security, including the limited waiver of sovereign immunity in Section 19(b), much less that it persuaded either court to adopt that position. The *Moses* judicial-estoppel test is clearly not satisfied.

2.    Plaintiffs assert that "the Republic is also precluded from advancing its dismissal argument by the doctrine of *res judicata*" (Opp. at 25), but that doctrine likewise does not apply. As a threshold matter, the Supreme Court has identified "good reasons to question any application of claim preclusion to defenses," because "various considerations, other than actual merits, may govern whether to bring a defense." *Lucky Brand Dungarees, Inc.* v. *Marcel Fashions Grp., Inc.*, 590 U.S. 405, 413 n.2 (2020) (internal citations omitted).

And to the extent a plaintiff can make offensive use of *res judicata*, its requirements are not satisfied here. "The doctrine of *res judicata* prevents repetitious litigation involving the same causes of action or the same issues." *I.A.M. Nat'l Pension Fund, Benefit Plan A* v. *Industrial Gear Mfg. Co.*, 723 F.2d 944, 946 (D.C. Cir. 1983). It "embodies the 'fundamental precept of common-law adjudication that a right distinctly put in issue and directly determined by a court of competent jurisdiction cannot be disputed in a subsequent suit between the same parties or their privies.'" *Hegna*, 908 F. Supp. 2d at 126 (quoting *Montana*, 440 U.S. at 153 (cleaned up)). Here, the scope of the Republic's sovereign immunity waiver was not "distinctly put in issue and directly determined" by the English court. Critically, the English court's determination "reflects no consideration of sovereign immunity under the FSIA, the essential consideration for subject matter jurisdiction in an action against a foreign state."[10] *Jerez*, 964 F. Supp. 2d at 60.

---

[10]    Contrary to Plaintiffs' assertion (Opp. at 10–11), paragraph 15 of the English judgment, which grants each Plaintiff an "individual right to enforce the Judgment" provided that they "retain holdings of the Securities," did not "establish[] Plaintiffs' rights to enforce the Judgment" in an

In the face of this clear record, Plaintiffs say that "[t]he Republic could have pressed its 'Plaintiffs are not Holders' argument before the English court" but "chose not to do so."  (Opp. at 27.)  Plaintiffs are wrong.  In the English Proceedings, the Republic had no reason to argue that Plaintiffs are not Holders for all purposes under the Securities, or are not Holders under Section 19(b)'s waiver—those questions had no relevance to the Republic's defenses or to any aspect of the English Proceedings.  (Middleditch Decl. ¶ 21.)  As Plaintiff's own authority makes clear, *res judicata* "does not bar a litigant from doing in the present what he had no opportunity to do in the past."  *Drake* v. *F.A.A.*, 291 F.3d 59, 67 (D.C. Cir. 2002).  Because the scope of the Republic's waiver of immunity for enforcement actions brought in this Court under the FSIA was not—and could not have been—"fully and fairly litigated and finally decided" in England, *res judicata* does not apply.  *Jerez*, 964 F. Supp. 2d at 59; *see Hegna*, 908 F. Supp. 2d at 133 (it is "well-established" that *res judicata* does not preclude parties "from litigating issues that could not have been raised" in the prior action).

In short, Plaintiffs cannot rely on either judicial estoppel or *res judicata* to avoid the Global Security's express bar on enforcement by beneficial owners in this Court.  Because the Global Security clearly and unambiguously limits the Republic's waiver of immunity for enforcement actions in this Court to those brought by "the Trustee or a Holder" (Compl. Ex. 5

---

Other Court like this one.  (Compl. Ex. 1 (June 9, 2023 Order) ¶ 15; Middleditch Decl. ¶¶ 33–35.) The English judgment says nothing about enforcement outside England.  Moreover, the English court explicitly recognized that the Trustee's participation may be required in certain enforcement actions.  (Middleditch Decl. ¶¶ 38–42.)  Such enforcement actions include an action for enforcing a Related Judgment in an Other Court, which can be brought by only "the Trustee or a Holder." (Compl. Ex. 5 (2005 Global Security) § 19(b) at R-16.)  If Plaintiffs could step into the Holder's shoes and bring individual enforcement actions in Other Courts, then the English court's recognition of "the need for the Trustee to participate as a party" would have been unnecessary.

(2005 Global Security) § 19(b) at R-16), Plaintiffs' enforcement action must be dismissed for lack of subject-matter jurisdiction.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice.

Respectfully submitted,

/s/ *Robert J. Giuffra, Jr.*
Robert J. Giuffra, Jr. (NY Reg. No. 2309177)
Sergio J. Galvis (NY Reg. No. 1934264)
(*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
Telephone:    (212) 558-4000
Facsimile:    (212) 558-3588
giuffrar@sullcrom.com
galviss@sullcrom.com

Amanda F. Davidoff (D.C. Bar No. 978033)
Thomas C. White (D.C. Bar No. 90010165)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.
Washington, D.C.  20006-5215
Telephone:    (202) 956-7500
Facsimile:    (202) 293-6330
davidoffa@sullcrom.com
whitet@sullcrom.com

*Counsel for the Republic of Argentina*

March 27, 2026

-22-

**CERTIFICATE OF SERVICE**

Pursuant to Local Civil Rule 5.4(d), I hereby certify that, on March 27, 2026, I caused the foregoing Defendant The Republic of Argentina's Reply in Support of Its Motion to Dismiss the Complaint to be electronically filed via the Court's CM/ECF system, which effected service of the document upon all counsel of record.

/s/ *Robert J. Giuffra, Jr.*
Robert J. Giuffra, Jr.

*Counsel for the Republic of Argentina*